# Hibler *against* Hoag.

An auction is a sale by consecutive bidding, intended to reach the highest price of the article, by exciting competition for it; such only is prohibited by the Act of the 2d of April 1830.

ERROR to the Common Pleas of *Luzerne* county.

William Hibler as well for himself as for the county of Luzerne, against Horace Hoag.

This action was brought before a justice for recovery of the penalty imposed by Act of Assembly of the 2d of April 1830, section 2, against hawkers and pedlars, for selling goods by public auction, or outcry. On the trial the following evidence was given on the part of the plaintiff.

George Dickover, being sworn, says he saw defendant sell a tea-spoon in Wilkesbarre, before the trial was had before the justice. He held up the spoon and said, " I believe this is the last spoon I 've got—who 'll give me a *bid* for it?" J. Albach said he would give a cent, and defendant threw the spoon to Albach, and Albach threw the cent to defendant. Defendant did not ask any one to give him more after the cent was offered.

Samuel Cox sworn. I saw defendant in February last, in Wilkesbarre, with goods in his wagon; he went round the streets crying, "Cheap goods for sale at George P. Steele's." His wagon was at Steele's with the goods: as I passed by Steele's, defendant held up combs, and said, "Who 'll give a cent for two pairs of combs?" I said " I will," and took them. Then he said, "Who 'll give the same for more?" I don't remember whether any other person took any; a number of people were standing round, and defendant kept on crying and selling, and I went away. I think I saw him at it two days. He had a sign of cloth put up; on it was lettered, " *Here it is;*" and afterwards something more.

Jonathan Marcy sworn. I saw defendant on the same day the suit commenced before the justice, offering goods for sale at his wagon, on the side-walk; he held out combs and said, " two pair of combs for a penny, who 'll give a penny for two pair of combs?" He sold the combs to some one; saw him sell some other small articles in the same way; took them from his wagon. I saw his sign; it was a piece of muslin, lettered "*Here it is;*" afterwards something more was added. He showed me his license to peddle.

Cross-examined—I saw defendant *deliver* other goods he sold

[Hibler v. Hoag.]

there besides the combs. I saw him put up the sign; don't remember his asking more than one price for the goods sold.

The court below (Jessup, President,) was of opinion that the proof in the cause did not establish an offence against the provisions of the statute, and so instructed the jury.

Verdict for defendant.

*Wurtz* and *M'Clintock,* for plaintiff in error, argued that the design of the Act of Assembly, was to prohibit that public exposure of goods to sale, such as would collect a crowd together, and enable the owner thus to dispose of them. The device adopted by the defendant was a mere evasion of the law. Act of 2d of April 1830. 11 *Serg. & Rawle* 86.

*Kidder,* for defendant in error. The proof did not establish the fact, that the defendant by his exposure of his goods, invited competition, which is essential to an auction, and what the law intended to provide against. *Babington on Auc.* 1, 2; *Johns. Dic.* title " *Auction.*"

PER CURIAM.—In every sort of auction, there are either successive bids for the property, or successive offerings of it at different prices, in a way to provoke competition. By the usual practice, the buyers successively bid more and more, till the highest point is attained; and the same result is obtained by the process in Holland, of proposing the article at prices successively lower, till a purchaser is found at its outside value. In the instance under consideration, there was no bidding at all; the property being offered once and for all, to any one who would take it for the sum named. What else does the ordinary retailer, except that he does not proclaim his price aloud, or take the same measures to attract the public attention? He waits to be wooed. Was this a sale then within the words of the statute, by public vendue or *outcry?* It is pretty clear from the ceaseless tautology in the language of legislative bodies, that this word "outcry" was used in this instance, as the synonyme of its predecessor; and that it was not intended to interdict a sale by outcry, unless it were at the same time, a sale by auction. What then is understood by an auction, according to the usages of Pennsylvania? It is a sale by consecutive bidding, intended to reach the highest price of the article by competition for it; and such a sale the legislature certainly had in its view. The statute is a penal one, and though it is to be strictly construed against the commonwealth, it is not to be severely construed against the accused: we must not give it a wider range than the legislature intended to give it. Whether a sale by bidding downwards, as it is improperly called, would be within its purview, we pretend not to determine; as such a sale, or rather an inversion of it, is not un-

I. — 70                2 w

known to us as a method of disposing of unseated lands for taxes, in order to get the sum assessed for the least quantity of the tract; but the ordinary auction of chattels is the one which, in a case like the present, we are to suppose the legislature had in its view.

Judgment affirmed.