## Commonwealth *v.* Rudolph Harmel, Appellant.
## Commonwealth *v.* Jacob Coon, Appellant.

[Marked to be reported.]

*Hawking and peddling—Sale—Bailment—Act of Feb. 6, 1830.*

A person went from house to house delivering clocks under a written agreement which stated that a clock was rented for the term of thirteen months at the rate of twenty-five cents per week, or thirteen dollars for the term, and the lessee might at any time during the term purchase the clock for the price of thirteen dollars, and be allowed all rents as a credit on such purchase. Defendant admitted that he sold clocks. A witness testified that defendant offered to sell a clock to her, that she took it, and that the paper relied on as a lease was produced, executed and left with her as a receipt for the money paid. *Held*, that a judgment against defendant for peddling clocks without a license in violation of the act of Feb. 6, 1830, P. L. 39, was properly entered.

*Constitution—Act of Feb. 6, 1830—Selling clocks—Interstate commerce.*

The act of Feb. 6, 1830, P. L. 39, forbidding the peddling of clocks without a license, does not interfere with interstate commerce, and is not in violation of the Constitution of the United States.

Clocks may be sent into this state in manufacturers' packages, and may be sold in the same packages, under the authority of the interstate commerce clause of the Constitution; but, once in this state and the package opened by the consignee, the disposition of the separate articles at retail is infra-state traffic and subject to the police regulations that experience may show to be necessary for the protection of citizens in the comfort of their homes and the enjoyment of their property. By MR. JUSTICE WILLIAMS.

Argued Nov. 9, 1894. Certiorari and appeal, No. 186, Oct. T., 1894, by defendant, from judgment of Q. S. Allegheny Co., in favor of plaintiff on appeal from judgment of justice of peace. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from summary conviction.

From the record it appeared that defendant was arrested and charged before a justice of the peace with peddling clocks without a license, under the act of Feb. 6, 1830, P. L. 39. At the time appellant was arrested he was canvassing for clocks for the American Wringer Co., a Rhode Island corporation. The so-called lease was in the following form:

" Article No. 11.863.                              May 21, 1894.

" This indenture witnesseth that The American Wringer Co., successor to the Metropolitan Mfg. Co., the first party, does hereby rent unto Mrs. B. Daly, the second party, one clock the term of 13 months from the date hereof, for the use of which clock said second party agrees to pay to said first party the sum of 25 cents rent per week, in advance, which sum said second party agrees is a reasonable rental therefor ; and said second party further agrees, that at any time during the term of this lease when said rent, or any part of it, shall be in arrears and unpaid, the said second party will deliver up said clock to said first party and forfeit the residue, if any, of the term of this rental, said second party to so deliver up said clock in as good condition as when by them received, the natural wear and decay only excepted.

" Husband's Place of Business :    Name, MRS. B. DALY, [SEAL.]
                                              " Residence, Turtle Creek.

" We, The American Wringer Co., successor to the Metropolitan Mfg. Co., the first party in the foregoing rental, agree that said second party may purchase at any of the stores of the said first party the above described article at any time during the term of the above described rental for the price of $13.00 in cash, and be allowed as a credit on such cash purchase whatever said second party has paid thereon as rent under the above agreement.

" Signed, THE AMERICAN WRINGER CO., successor to THE METROPOLITAN MFG. CO., opposite depot."

It appeared that defendant had admitted that he was selling clocks, and there was evidence that he had given the so-called lease as a receipt for the purchase money of a clock.   The evidence as to this appears by the opinion of the Supreme Court.

The defendant was summarily convicted before the justice of the peace.   On appeal the court, PORTER, J., entered the following judgment :

" The defendant, Rudolph Harmel, is adjudged guilty of going from place to place to sell and expose for sale clocks without a license so to do being by him first obtained ; and the said defendant is adjudged to forfeit and pay the sum of fifty dollars ; and in default of payment of said forfeiture it is ordered that the said Rudolph Harmel be committed to the

jail of Allegheny county until discharged by due process of law."

*Error assigned* was entry of above judgment, quoting it.

*W. K. Shiras, J. W. Kinnear* and *Geo. Shiras,* 3d, with him, for appellant.—A police regulation must be directed against a business or practice that is harmful, not against some of the persons who may engage in it: Sayre Boro. v. Phillips, 148 Pa. 482.

Wolf v. Clark, 2 Watts, 298, is the only case we have found where this act was directly before the Supreme Court. This case held that the act of 1799 and the act of April 2, 1830, the general peddling act, did not repeal or affect the act of Feb. 6, 1830, regulating tin and clock peddlers.

If the act of 1830 is not a police regulation it is void as a regulation of trade: Sayre Boro. v. Phillips, 148 Pa. 482; Millerstown v. Bell, 123 Pa. 151; Com. v. Northern Liberties Gas Co., 12 Pa. 318; Brennan v. Titusville, 153 U. S. 289.; Welton v. Missouri, 91 U. S. 282.

Defendant was not a peddler and was not peddling or hawking clocks in violation of the act in question when arrested: Com. v. Gardner, 133 Pa. 284.

Defendant was a canvasser, and while it is true that he sought people at their homes and took orders, he made no sales whatever, he collected no money, the rentals were collected weekly or monthly by regular collectors. There was no opportunity for imposition as in the case of peddlers: Mfg. Co. v. Heil, 115 Pa. 487.

At the time the act of Feb. 6, 1830, was passed, there was no knowledge or thought of a business of this kind; and therefore it was not intended to interfere with transactions of this nature. The act of 1830, being a penal statute, must be construed strictly; if there is any doubt, it should be resolved against the commonwealth: Cake v. Jacoby, 2 W. N. 391.

*A. B. Stevenson,* for the Commonwealth.—The act does not prohibit the sale of clocks at all, but on the contrary its provisions encourage honest and legitimate sales in these goods, by licensing persons of good moral character to hawk them.

The act of Feb. 6, 1830, is much broader and less stringent than the general acts. It was construed by this court in 1833, in Wolf v. Clark, 2 Watts, 298, and was then held valid and has never been doubted since. See also Com. v. Vrooman, 164 Pa. 306; 9 Luz. L. R. 129.

Sayre v. Phillips, 148 Pa. 482, was the case of a borough ordinance that discriminated against all persons peddling, etc., who were non-residents of Sayre.

Defendant was a mere peddler as defined by Mr. Justice WILLIAMS, of this court, in Com. v. Gardner, 133 Pa. 284, and which is the most complete description of the peddler and his methods recently given by this court.

There are many police regulations which do affect interstate commerce, but which have been and will be sustained as clearly within the power of the state: Brennan v. Titusville, 153 U. S. 289; Ficklen v. District, 145 U. S. 1.

The question of bailments or ownership of the clocks has no application here, as this court has held that whether defendant was the owner or not can make no difference: Wolf v. Clark, 2 Watts, 298; Gibson v. Kauffield, 63 Pa. 168.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895:

The judgment now appealed from rests on three distinct findings of fact made by the learned judge of the court below. These are, first, that the defendant was engaged in April, 1894, in the business of selling clocks in Allegheny county; second, that he made his sales not as a merchant having a place of business but as a peddler going from house to house and exposing his clocks for sale in the homes he had invaded; and, third, that he was in so doing violating the act of 6th February, 1830, P. L. 39, as he had no license authorizing him to sell clocks.

These findings have not the conclusive effect of a verdict but they are entitled to great weight, and will not be disturbed unless plain error is shown. As to the second and third findings no serious question is raised. It is conceded that the defendant had no license under the act of 1830, and it is not denied that he carried his clocks from house to house and disposed of them wherever he could bring a possible customer to bay.

The first finding is attacked on the allegation that the defend-

ant did not sell clocks but let them for hire, and that the persons who took them were bailees and not purchasers. In support of this position the written agreement made with customers was relied on. It provided that the American Wringer Company rents one clock for the term of thirteen months at the rent of twenty-five cents per week or thirteen dollars for the term, and the lessee may at any time during the term purchase the clock for the price of thirteen dollars and be allowed all rents as credit on such purchase. Now let it be conceded that this agreement may be enforced according to its terms between the parties because it is their agreement; the question still remains, what is its legal effect as to the rights of creditors or the commonwealth? The rent and the price of the article are the same. The payment of the price passes the title to the purchaser. It was plain to the court below that the device of a lease was a cover for an actual sale in violation of the act of 1830, so thin as to be transparent. The justice of the peace before whom they were first brought testifies that the defendant admitted that he was selling clocks. The constable who arrested him testifies that he saw him going from house to house peddling clocks. Maggie Tyrie, a witness, says he offered to sell a clock to her. She finally took it, and the paper relied on as a lease was produced, executed and left with her as a receipt for the money paid. Two other witnesses testified that clocks were offered to them to be paid for by monthly or weekly payments. G. H. Rishel, the general agent of the American Wringer Company at Pittsburg, testified that the company was a corporation created under the laws of Rhode Island; that the clocks were made in Connecticut and sent to him in original packages. By him they were delivered to the road agents of the company, who sold them at retail upon a commission. In answer to the question " On what terms are they sold?" his answer was " They are sold on monthly installments." This testimony clearly warranted the first finding of fact, viz: that the clocks were sold, and that the lease or instrument so called was a device contrived to evade the act of 1830, and defeat its salutary provisions.

The findings of fact standing undisturbed, there is but one question left and that a question of law. Is the act of 1830 constitutional? It is not alleged that it violates any provision

of the Constitution of this state, but it is said that it violates
the Constitution of the United States because it interferes with
interstate commerce. But how does it interfere with interstate
commerce? It is a part of a system of police legislation, begin-
ning as early as 1784, directed against the business of peddling
because of the fraud and crime connected with it. The act of
1784 in its preamble recites the mischief requiring a remedy,
thus: "Whereas many idle and vagrant persons may come
into this state and under pretence of being hawkers and peddlers
may greatly impose on many persons in the quality and price
of goods, and also commit felonies and other misdemeanors;
for preventing such inconveniences and evil practices, and to
the intent that no person may be admitted to follow the business
of hawkers and peddlers within this state but those who are of
known honesty and civil behavior;" and then follow the pro-
visions of the statute requiring proof of good moral character
and the payment of a license fee by the applicant. As new
branches of this peripatetic commerce have sprung up the leg-
islature has extended the prohibition of the act of 1784 to them.
As early as 1830 the peddling of worthless clocks became an
evil of sufficient magnitude to attract the attention of the leg-
islature, and in that year the act now before us was passed
requiring all persons, resident or non-resident, desiring to
embark in the business, to make proof before the court of quar-
ter sessions of their "good moral character" and to obtain a
license authorizing them to peddle clocks. The purpose of the
act was to secure some measure of protection for the citizens of
the commonwealth against the frauds practiced upon them by
strangers who had no place of business in the state and who
when wanted to answer for their cheats and crimes were safely
beyond the reach of process.

This court has uniformly asserted the validity of such leg-
islation as a reasonable and proper exercise of the police power
and we do not propose to travel over the argument again in
this case.

It is urged that the act is a trade regulation like the ordi-
nance of Sayre borough considered in 148 Pa. 482. But this
statute is not directed against certain persons engaged in ped-
dling clocks. It is directed against all persons. It does not
distinguish between the citizens of different civil subdivisions

of this state or between citizens of Pennsylvania and those of any other state. It is directed against the business of peddling clocks by whomever undertaken. It does not however prohibit the business, but regulates it. The regulation is reasonable. It is impartial in its operation. It is general in its application. It meets the tests required by Millerstown v. Bell, 123 Pa. 151, by Sayre Borough v. Phillips, 148 Pa. 482, and by Welton v. Missouri, 91 U. S. 275.

In the recent case of Brennan v. The City of Titusville, the judgment of this court was reversed by the Supreme Court of the United States on the ground that the ordinance upon which the prosecution rested was not a police, but a trade regulation, but it was said in that case that "by virtue of its jurisdiction over persons and property within its limits a state may provide for the security of the lives, limbs, health and comfort of persons, and the protection of property so situated," subject to the qualification that a "subject-matter which has been confided exclusively to Congress by the constitution is not within the police power of the state unless placed there by congressional action."

We submit with great respect that the control of no branch of retail trade "has been confided exclusively to Congress by the constitution;" and that the interstate commerce clause was never intended to do more than keep the great channels of commerce open, and to guard against such obstructions as state custom houses, state inspections, state taxes and the like on goods passing from manufacturer or wholesaler in one state to retail dealer or consumer in another.

It must be conceded that these clocks may be sent into this state in manufacturer's packages, and they may be sold in the same packages under the authority of the interstate commerce clause; but once in this state and the package opened by the consignee, the disposition of the separate articles at retail is infra-state traffic and subject to the police regulations that experience may show to be necessary for the protection of citizens in the comfort of their homes and the enjoyment of their property. To deny this power to the states and to assert that the wandering and unscrupulous adventurers who buy their brass jewelry or worthless clocks on one side of a state line may, as agents of interstate commerce, invade any other state to cheat

and defraud its citizens, is to degrade the whole subject and to create needless friction between the general government and the people of the several states.

It is suggested that these clocks standing on the shelves of purchasers belong to the Rhode Island corporation still. This overlooks the finding of the court below that they were sold. It overlooks the testimony of the general agent of the corporation who says distinctly " they were sold on monthly installments."

Finally the general principle that penal statutes are to be strictly construed is appealed to as a reason for reversing the judgment of the court below. We cannot see its applicability. The statute forbids the peddling of clocks. The defendant was fairly and properly convicted, on the evidence, of violating the statute.´ He did exactly that thing which the statute commanded him not to do. He has been found guilty of violating it and this finding is abundantly supported by the testimony. He should therefore suffer the penalty he has incurred.

If any vestiges of the police power of the states remain to them for the protection of the property or of the comfort of the people, we must think the statute now before us is a proper exercise of that power, and. that the states do not invade the jurisdiction of Congress when they seek to regulate a business conducted, in the language of the preamble to the peddler's act, by " idle and vagrant persons," and in a manner that does " greatly impose on many persons in the quality and price of goods," and which results in the commission by these irrepressible vagrants of " felonies and other misdemeanors."

We cannot bring ourselves to doubt the validity of the statute of 6th February, 1830, or the justice of the conviction and judgment appealed from

The judgment is affirmed.