# Goss Printing Press Company, Appellant, *v.* Francis Jordan.

*Bailment—Sale—Delivery—Executory contract.*

Delivery does not consist in the mere transfer of location or custody of property. There must be the mind of both parties concurring in the transfer in accordance with the contract, the intent of one to deliver and the other to receive.

The fact that the original intention of the parties is to make a sale, and that such is the legal effect of their first agreement, does not prevent a change while it is still executory into a bailment with an alternative of future conversion into a sale on the compliance with stipulated conditions.

Where a printing press is erected for trial on the premises of an intended purchaser to be paid for on acceptance as satisfactory, there is no delivery until acceptance and payment, and the parties may, while the press is still on trial, change the contract in good faith to one of bailment, with an alternative conversion into sale, and after such change in the contract, the press will not be liable to seizure under execution by the judgment creditors of the person for whom it was erected.

Argued June 3, 1895. Appeal No. 24, May Term, 1895, by plaintiff, from judgment of C. P., Dauphin County, March Term, 1895, No. 92, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Sheriff's interpleader to determine ownership of a printing press. Before SIMONTON, P. J.

At the trial it appeared that the Goss Printing Press Company, entered into a contract with W. F. Jordan to build a printing press for Jordan on the latter's premises. The title of the press to remain in the Goss Printing Press Company until the press was paid for on acceptance as satisfactory. The press was built in Chicago, shipped by railroad to Harrisburg, consigned to the Telegram Publishing Company (which was Jordan) and received there by plaintiff's workmen and set up in Jordan's building. But before the expiration of the thirty days allowed for trial, and before the press had been accepted, or any payment made on account thereof, the parties entered into a second contract in the form of a lease with an alternative conversion into sale on compliance with certain conditions.

Some time after the second contract was made the sheriff levied upon the press as the property of Will F. Jordan, under an execution upon a judgment in favor of Francis Jordan, and this feigned issue was awarded to determine the title to the property.

The court ruled that before the execution of the second contract the property had passed into the possession of the purchaser, W. F. Jordan, to such extent that his creditors had a right to.levy upon it, and gave binding instruction for the defendant.

Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned*, among others, was above instructions.

*S. J. M. McCarrell, Jas. A. Stranahan* and *Robt. Snodgrass* with him, for appellant.—There was no delivery to Jordan which would pass the title so as to enable his creditors to seize and sell the property: Welsh v. Bell, 32 Pa. 12.

It is well settled that a change in the location of the property is not always necessary or even practicable.   Due regard must be had to the character of the property, its intended use, the nature of the transaction, position of the party, etc.: McKibbin v. Martin, 64 Pa. 352; Garretson v. Hackenberg, 144 Pa. 107.

The parties had a right under the circumstances to change the contract: 15 Am. & Eng. Ency. of Law, 253; 2 Am. & Eng. Ency. of Law, 40.

The contract in this case is modeled after, and follows almost literally the form of contract which was the subject of inquiry in Rowe v. Sharp, 51 Pa. 26.

The contract is a valid one: Myers v. Harvey, 2 Pa. 463; Clark v. Jack, 7 Watts, 375; Edward's App., 105 Pa. 103; Wertz v. Collender, 20 W. N. C. 59; Ditman v. Cottrell, 125 Pa. 606; Brown Bros. & Co. v. Burlington, 163 Pa. 76.

*Louis W. Hall, Charles L. Bailey, Jr.,* and *M. W. Jacobs* with him, for appellee.—Possession of personal property is the great mark of ownership.   It is almost the only index which the world in general has to look to: Martin v. Mathiot, 14 S. & R. 214.

The first contract is the ground of appellee's title: Ott v. Sweatman, 166 Pa. 217; 8 Am. & Eng. Ency. of Law, 426;

21 Am. & Eng. Ency. of Law, 629; Brunswick v. Hoover, 95 Pa. 508.

The contract of November 12 was to cover a sale: Peek v. Heim, 127 Pa. 500; Thompson v. Paret, 94 Pa. 275; Forrest v. Nelson, 108 Pa. 481; Com. v. Harmel, 166 Pa. 89; Rowe v. Sharp, does not control this case: Brunswick & Co. v. Hoover, 95 Pa. 508; Wagner v. Com., 16 W. N. C. 75; Cooper v. Whitmer, 18 W. N. C. 376; Enlow v. Klein, 79 Pa. 488; Crist v. Kleber, 79 Pa. 290; Chamberlain v. Smith, 44 Pa. 431; Becker v. Smith, 59 Pa. 469; McCullough v. Porter, 4 W. & S. 177; King v. Humphreys, 10 Pa. 217; Stadtfeld v. Huntsman, 92 Pa. 53; Farquhar v. McAlevy, 142 Pa. 233.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895:

This case hinges on the question of delivery. The first contract was beyond dispute one of sale, and although the title would not have passed between the parties until full performance of the conditions, yet after delivery it would have been conclusively held to have passed in favor of creditors of the vendee. Equally beyond dispute, the second contract was one of bailment in which the title did not pass at all as against the bailor, either in favor of the bailee or his creditors. The question therefore is whether the circumstances under which the second contract was made were such as to deprive it of the force and validity it would have had if it had been made in the first instance. And of these circumstances the controlling one is whether or not there had been a delivery. If there had been, then all our cases agree that without further change of possession, it was too late for any change of their contract by the parties to affect the rights of an execution creditor. If on the other hand there had been no delivery the contract was entirely executory and could be changed at will by the parties.

Delivery does not consist in the mere transfer of location or custody of property. There must be the mind of both parties concurring in the transfer in accordance with the contract, the intent of one to deliver and the other to receive. Thus custody obtained surreptitiously or by trick or fraud does not amount to delivery, not merely because fraud vitiates everything into which it enters, but because there is no meeting of the minds of the parties. If goods be bought in a store for cash,

and wrapped up and handed across the counter to the purchaser, there is no delivery unless the money is paid, and so even if the goods are sent to the purchaser's home in charge of a clerk who is to get cash on delivery, merely handing them to the purchaser to unwrap for examination will not be delivery. " In order to make a sale which is conditional as to the parties, absolute as to creditors, there must be a delivery of the goods in pursuance of the contract, for without this there can be no present sale, and an agreement of sale without an accompanying transfer, amounts to nothing more than a contract to sell at a future time, or upon the fulfillment of stipulated conditions. Furthermore, the delivery of possession alone though a material indicium of ownership does not of itself constitute a sale, for the goods may be delivered in bailment, as in loan or hiring. There must in addition to the possession, be at least such a conditional or qualified title passed to the buyer as to give him a transferable interest in the chattels : " Edwards's Appeal, 105 Pa. 103.

The fact that the original intention of the parties was to make a sale, and that such was the legal effect of their first agreement, does not prevent a change while it is still executory into a bailment with an alternative of future conversion into sale on compliance with stipulated conditions. That was decided in Rowe v. Sharp, 51 Pa. 26, a leading case and the first of importance in this court requiring the construction of the so-called " leases " now in common use which are intended as contracts of bailment though looking to an ultimate sale. It is a case which though sometimes thought to be on the border line has never been qualified or pared down. The principal cases on this subject were very recently reviewed in Brown Bros. v. Billington, 163 Pa. 76, in which Rowe v. Sharp was reaffirmed and followed both on principle and on its facts. " The purpose of the parties was to effectuate a sale in the future directly to the bailee, who was to have actual possession in the meantime under a different arrangement, and we gave it our sanction as against creditors of the bailee because of the contract. In other words, although the intent of the parties, and the effect of their agreement, was to vest the title at a future day in the purchaser, he having actual possession in the meantime, yet as the intervening arrangement was upon a valid

contract of bailment as between the parties, the title of the bailor was preserved until terminated by compliance with the provision for a sale, at which time that portion of the agreement became operative:" 163 Pa. 76.

The most important of the prior decisions were discussed by our brother Green in that case, and it is not necessary to go over the ground so thoroughly covered by him. Two cases of later date have been cited, as to which a word may be said. In Com. v. Harmel, 166 Pa. 89, a contract in form of a lease was held to be a sale upon the express finding of fact on a summary conviction that it was a sale, and that the form was a colorable attempt to evade the peddler's act of 1830. And in Ott v. Sweatman, 166 Pa. 217, the cases were very ably reviewed by Jenkins, J., in the court below, whose opinion was adopted by this court. But there the second contract on which the bailment depended was not made until after essential portions of the machinery had been delivered and paid for under the original contract of sale. If the same crucial fact of delivery exists in the present case, then as already said, the same result will follow.

In the light of these principles, was there a delivery under the first contract? That contract contemplated a formal acceptance and a cash payment of $6,500, after a thirty days' trial had proved the press to be in accordance with its requirements. These acts were to be concurrent. The vendor could not make delivery and demand acceptance till after trial, and the purchaser could not demand delivery at any time without a tender of the money. Under such circumstances the transfer of the press to Harrisburg, and setting it up in the purchaser's building was certainly not a delivery as matter of law, for neither party intended it as such. On the contrary it was prima facie only a necessary step for the trial which was to precede delivery and acceptance. That could only be had in Harrisburg and therefore the press was brought there under the explicit terms of the contract for that purpose in the first instance. All the other facts, such as the shipping of the press with bill of lading naming the Harrisburg Telegram as consignee, the acts or sayings of the Goss company's men during the trial, etc., are comparatively unimportant, for they must be considered in connection with the intention of the parties and in subordination to the

requirements of their contract. If what was done with the press up to the time of the second contract was merely carrying out the preliminary trial which was required by the first contract, and there was no delivery or acceptance until after the making of the second contract, as the testimony of W. F. Jordan himself seems to indicate, and the second agreement was made because of Jordan's inability to comply with the terms of the first, then as the second was an unquestionably good contract of bailment, the delivery under it passed neither title nor possession to the bailee, which was subject to levy by his creditors. But if on the contrary after the trial was completed both parties agreed to a delivery and it was actually made under the first contract, and the second was an afterthought merely to secure the payment of the price to the Goss company, then as against the execution creditor such agreement was ineffectual. These are questions of fact which should be submitted to the jury under instructions in accordance with the foregoing views.

Judgment reversed and venire de novo awarded.