# Commonwealth of Pennsylvania *v.* Ebenezer P. Percival, · Appellant.

*Hawking and peddling—Assembling parts of a watch not manufacture—Act of* 1830.

A jeweler who assembles the parts of watches and puts them together and peddles them from place to place offends against the Act of April 2, 1830, P. L. 147, sec. 2, and is liable to indictment thereunder. He is not a manufacturer within the contemplation of the act.

The constitutionality of the proviso to the 2d section of the act not passed upon, as immaterial to the question of defendant's guilt.

Argued Oct. 26, 1899.    Appeal, No. 165, Oct. T., 1899, by defendant, from judgment of Q. S. Lebanon Co., Sept. Sess., 1898, No. 14, on verdict of guilty.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed.    Opinion by BEAVER, J.

Indictment for violating auction law.

It appears from the record and evidence that defendant, a jeweler and watch-maker, having his place of business in Philadelphia, was accustomed to purchase the movements, dials, springs, hands and cases separately, assemble these several parts and put them into a marketable condition as watches and that he had sold several of these watches, at Mt. Gretna at private sale and also by outcry to competitive bidders at public auction, whereupon he was arrested under the 2d section of the Act of April 2, 1830, P. L. 147, the act relating to hawkers and peddlers.

The jury, under instruction of the court, found a special verdict which is sufficiently set out in the opinion of the court.

The court entered judgment for the commonwealth under special verdict, filing the following opinion :

Two questions were raised by the contentions of counsel,

upon the facts found by the special verdict, (1) was the defendant the manufacturer of the watches sold by him at auction? and (2) is section 2 of the Act of April 2, 1830, P. L. 147, under which the defendant is indicted, constitutional?

The word "manufacture" is defined as follows by Webster: "To make or fabricate raw materials by the hand, by art, or machinery, and work into forms convenient for use." And "a manufacturer" as "A person engaged in the business of working raw materials into ware suitable for use." By Bouvier: "Any new combination of old materials constituting a new result or production in the form of a vendible article not being machinery." By Rapalje & Lawrence: "Anything made by art."

In Norris Bros. v. Com., 27 Pa. 494, it is said: ". To make in a mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. A cunning worker of metals is the maker of the ware he fashions, though he did not dig the ore from the earth, or carry it through every subsequent stage of refinement."

Almost the same language is used by the Court in the case of City of New Orleans v. LaBlanc, 34 La. 596. In Carlin v. West Assur. Company of Toronto, 57 Mo. 526, the Court says: "Whilst from its derivation the primary meaning of manufacture is making with hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced, so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from direct action of the human hand, from chemical process devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creation in ruder ages, are now commonly designated as manufactured."

These definitions differ in language and in scope, but agree, that to manufacture is to make by change of form, quality, or combination, either chemically or physically, of the matter of which the manufactured article is composed.

610     COMMONWEALTH *v.* PERCIVAL.

Opinion of Court below—Opinion of the Court. [11 Pa. Superior Ct.

[Under the facts found by the jury in their special verdict, the defendant is not protected by the language in any of the definitions quoted, nor any that we have been able to find. He is not a manufacturer or maker of watches. He does not make the works or running part of the watch, he does not even put the works together. He does not make the case into which the works are put. He does not make the dial nor the hands. He buys the works ready to put in the case, and the case ready to receive the works. He puts the works in the case and adjusts the dial and hands manufactured by somebody else. He has manufactured no part of the watches in controversy and the putting together of the manufactured parts does not make him the manufacturer of the wares sold.] [1]

The constitutionality of the act of April 2, 1830, under which and by virtue of the Act of February 24, 1847, P. L. 164, the defendant is indicted, has been settled by the decision of Justice WILLIAMS in the case of Com. v. Brinton, 25 W. N. C. 277. The decision is adverse to the defendant's contention. [The commonwealth is entitled to judgment upon the special verdict.] [2]

[Sentence must be imposed under the Act of February 24, 1847, P. L. 164.] [3] The defendant is to appear for sentence on August 28, 1899.

Verdict and judgment for the commonwealth. Defendant appealed.

*Errors assigned* were (1–3) to portions of the opinion on the special verdict, reciting same. (4) In entering judgment on the special verdict in favor of the commonwealth.

*Thomas H. Capp*, with him *Caleb S. Brinton*, for appellant.

*J. M. Funck*, with him *E. E. McCurdy*, district attorney, for appellee.

OPINION BY BEAVER, J., November 20, 1899:

The jury in this case returned, under the instruction of the court below, the following special verdict: "The defendant is a resident of the city of Philadelphia in the state of Pennsylva-

nia, is engaged and has a place of business in said city, No. 221 N. Eighth street, where he carries on a business of a jeweler and watchmaker; purchases the movements, dials, springs, hands and cases separately, assembles these several parts and puts them into a marketable condition as watches. During the summer season he goes from place to place selling these watches privately and by auction and in the course of his travelings he visited Mount Gretna, in the county of Lebanon, on August 18, 1898, where he sold several of these watches at private sale and by outcry to competitive bidders at public auction; that the several watches herewith brought into court and made a part of this special verdict are similar to the watches sold by him on the above mentioned date at Mount Gretna. If, under the above facts and the Act of Assembly, approved April 2, 1830, P. L. 147, sec. 2, which is made a part of this verdict, the court is of the opinion that the above act of assembly is constitutional and that the defendant has violated any of the provisions thereof, then we find the defendant guilty in manner and form as he stands indicted, otherwise not guilty and the county to pay the costs of prosecution." Upon consideration of these facts, the court below entered judgment for the commonwealth and the defendant was duly sentenced.

Two questions are raised by the appellant: First, that he has not violated the Act of April 2, 1830, P. L. 147, because he is a manufacturer of goods, wares and merchandise within this commonwealth and has, therefore, a right under the act to expose the products of his own manufacture to sale by vendue or outcry; and, second, that the act is unconstitutional.

A manufacturer, as defined by Bouvier, is " one engaged in the business of working raw materials into wares suitable for use." This definition is practically recognized in Commonwealth v. Gormly, 173 Pa. 586. It is true that in that case the main question for consideration was whether or not the defendant was a dealer in goods, wares and merchandise within the meaning of the laws which impose a mercantile license tax. The defendant there was a plumber who purchased and assembled and put together the various parts of steam heating apparatus. As is said by Mr. Justice GREEN in his opinion, "For instance, a complete steam heating apparatus requires boilers, radiators, pipes, valves, one or more furnaces and other articles

to make a complete work. Some of these things might be obtained from one dealer and others from other dealers, but the ultimate thing which the defendant supplies to his customer is not the thing that he bought. His own work too must be added—a necessary and expensive part of the completed whole, as all persons know who have such bills to pay." The defendant in that case was held to be "neither a manufacturer nor a dealer in the strict sense of the latter term." In the case under consideration, the defendant assembled and put together the various parts of a watch. He made none of them. He expended no labor upon them to fit them for their place. He purchased no part of any of them as raw material. Each particular part of the finished watch was in itself a finished product. Much less is he a manufacturer in contemplation of the act under consideration with the facts in the case stated than the plumber in the case above recited.

The contention as to the unconstitutionality of the law is that it offends against the federal constitution in regard to interstate commerce. Legislation in regard to hawkers and peddlers began very early in the history of our commonwealth. The preamble to the Act of March 30, 1784, 2 Sm. L. 99, is as follows : " Whereas many idle and vagrant persons may come into this state and, under pretense of being hawkers or peddlers, may greatly impose upon many persons in the quality and price of goods and also may commit felonies and other misdemeanors : For preventing such inconveniences and evil practices and to the end that no person may be permitted to follow the business of hawkers or peddlers within this state but those who are of known honesty and civil behaviour," and then follow the provisions of the act. There seems to have been in 1830 a return of the apprehension of the legislature as to the evils which might follow indiscriminate hawking and peddling and, therefore, the Act of February 6, 1830, P. L. 39, relating to tin and clock peddlers, and the act under consideration for regulating hawkers and peddlers, passed the same year. It is very evident, from a consideration of the preamble to the act of 1784 and of the acts themselves, that the legislature had in mind the regulation of hawking and peddling under the police power of the state which rested in it. These various acts have received judicial construction and have uniformly been regarded by the

courts as resting upon the police power and constituting a police and not a trade regulation. This is apparent from the consideration of the cases prominent and especially pertinent, among which are Com. v. Brinton, 132 Pa. 69, which discusses and determines the constitutionality of the 1st section of the act in question, and Com. v. Harmel, 166 Pa. 89, which contains a like discussion of the act of February 6, 1830, supra. The 2d section of the act was under consideration in Hibler v. Hoag, 1 W. & S. 552, and in Shoop v. The Commonwealth, 3 Pa. 126; but in neither of these cases was the question of its constitutionality raised or considered. The appellants' argument is specially directed against the proviso of the 2d section which is, "That nothing contained in this act shall prohibit the citizens of this commonwealth who may manufacture goods, wares or merchandise within this commonwealth from vending or exposing the same to sale in the same manner as if said act had not been passed into a law." If this proviso stood as independent legislation, there would be some force in the argument of the appellant, but it is to be observed that the proviso is in favor of the citizens of the commonwealth, and it is easy to see that, in view of the evil to be remedied and of the remedy which the legislature had in mind, the safety of the people would be considered as less endangered at the hands of our own citizens than of irresponsible hawkers and peddlers who might come no one knew whence and go no one knew whither. If the defendant had been a manufacturer within and an effort had been made to impose the penalty provided in this section for the sale of goods manufactured without the commonwealth, the question raised by the appellant would have been much closer, but such is not the case, and, even if the contention were well founded and we were disposed to assent to it, the appellant could in no wise be benefited, for, if the proviso be swept away, he has nothing whatever to stand upon. Admitting that the proviso sins against the provisions of the federal constitution in regard to interstate commerce, it might be held to be unconstitutional and the remainder of the act valid. " A statute may be void only so far as its provisions are repugnant to the constitution. One provision may be void and this will not affect other provisions of the statute. If the part which is unconstitutional in its operation is independent of and readily separable from that

which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such:" Rothermel v. Meyerle, 136 Pa. 250. If it were necessary in this case to invoke the aid of this principle, we would do so without hesitation. So far as the rights of this appellant, therefore, are concerned, it is not necessary for us to pass specifically upon the question raised by him in regard to the constitutionality of the proviso of the second section of the act above quoted for the reason, as already intimated, that, even if so declared, it could not in any event relieve him.

Upon a consideration of the whole case, we think the conviction was legally had and that the action of the court below in entering judgment upon the special verdict was proper.

Judgment affirmed.