## In re DEVON MANOR CORPORATION.

(District Court, E. D. Pennsylvania. February 11, 1919. On Hearing on Additional Testimony on Certificate of Review, June 30, 1919.)

No. 6320.

BANKRUPTCY ☞140(1)—SALES ☞90—PROPERTY PASSING TO TRUSTEE—CONVERSION OF EXECUTORY SALE CONTRACT INTO BAILMENT.

    Where an order for machinery to be delivered to a common carrier under a conditional sale contract was so modified by the seller, with the acquiescence of the purchaser, as to retain possession in the seller as consignee after shipment until a lease was executed by the purchaser, under which delivery was made, the bailment superseded the executory contract of sale, and the rights of a trustee in bankruptcy of the purchaser are subject to the terms of such bailment.

In Bankruptcy. In the matter of Devon Manor Corporation, bankrupt. On review of order of referee. Affirmed on rehearing.

James J. O'Brien and Fox & Rothschild, all of Philadelphia, Pa., for petitioner.

Reber & Granger, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. The learned referee was of the opinion that the contract dated November 26, 1917, tested by all the requirements of the law expressed in the Pennsylvania decisions, constitutes on its face a valid contract of bailment for the leasing or hiring of the machinery claimed. He was also of the opinion that the order, dated September 22, 1917, of the Devon Manor Corporation, signed in its behalf by its president, is, standing alone, a contract of conditional sale.

There is no dispute that that is the proper construction to be put upon those written instruments. The order of September 22d is in form as follows:

"Order No. 193.                               Form 10.
"To the Troy Laundry Machinery Co., Ltd.:
"Please ship, subject to the conditions printed on the back hereof, to the undersigned: Name of Laundry, Devon Manor Corporation. Street and No., ———. City or town, Devon. County, Chester. State, Pa. Via ———, f. o. b. New York, the chattels below mentioned, for which ——— hereby agrees to pay you $———, $——— cash, and the balance as follows: $50.00 on the 10th of October, and the balance in 12 equal monthly payments, with lease, interest-bearing notes, and insurance."

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A description of the machinery, stating the price, amounting to $2,-145, follows. The pertinent part of the conditions printed on the back is as follows:

"That all of the machinery ordered shall remain the property of the seller until the purchase price thereof has been fully paid in cash, and in case of any default in the payment of any part of said price the seller may enter upon the premises of the purchaser, and retake possession of such machinery."

The referee held, however, that:

"After the execution of the conditional sale contract of September 22, 1917, the parties entered into the lease contract of November 26, 1917, and that at the time of the execution of the lease contract the machinery was still in the possession and control of the claimant, and was installed about two weeks later in the building of the lessee by the claimant's servants."

It is upon the question whether delivery to the Devon Manor Corporation had been made prior to the time of the execution of the lease agreement that the case turns, if the latter is to be construed as supplanting the terms of the contract of sale.

With due regard to the rule that a finding of fact by a referee will not be disturbed, unless clearly and manifestly erroneous or unsupported by evidence, the question as to when the delivery took place became, under the evidence, a question of law.

The evidence consists of the contract of September 22, 1917, under which the machinery was to be shipped to the Devon Manor Corporation, at Devon, Chester county, Pa., f. o. b. New York, and the testimony of Mr. Ryan, the sales agent of the claimant, to the effect that the machinery had been sold to the Devon Manor Corporation, and that it was in the freight depot at Devon at the time of the signing of the agreement of November 26, 1917, that it was installed by the servants of the claimant after the lease was signed, and that $500 in cash was paid at that time.

Mr. Ryan's testimony alone is not sufficient to support a finding that the machinery was then in the possession of the claimant. The question of delivery, therefore, depends upon the intention of the parties, as shown by the terms of the order contract of September 22, 1917, providing for shipment f. o. b. New York. Under all the authorities, in the absence of a stipulation to the contrary, delivery to a common carrier at a distant point constitutes a delivery to the vendee, so that title, conditioned only upon payment of the purchase price, had passed to the Devon Manor Corporation prior to the arrival of the machinery at Devon freight station. Dannemiller v. Kirkpatrick, 201 Pa. 218, 50 Atl. 928; Pittsburgh P. & P. Co. v. Cudahy P. Co., 260 Pa. 135, 103 Atl. 548; Philadelphia & Reading Ry. Co. v. Parry, 66 Pa. Super. Ct. 49; General Electric Co. v. Richardson, 233 Fed. 84, 147 C. C. A. 154; Dentzel v. Island Park Association, 229 Pa. 403, 78 Atl. 935.

The title, according to the terms of the contract, was conditioned upon the purchase price being paid as therein set out, "$50.00 on the 10th of October, and the balance in 12 equal monthly payments, with lease, interest-bearing notes, and insurance;" but there is nothing in its terms to defer delivery to the vendee beyond the delivery to the

common carrier. Had the contract of conditional sale remained executory by postponement of delivery, no doubt, under the doctrine of Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774, and Goss v. Jordan, 171 Pa. 474, 32 Atl. 1031, the parties could have entered into a contract of bailment to supplant the terms of an executory contract of sale; but upon delivery to the common carrier the sale was no longer executory, and title had passed to the Devon Manor Coporation as purchaser, conditioned upon payment of the purchase price. In the interim between delivery and November 26, 1917, therefore, a creditor could have successfully attacked the claim of title by the present claimant. When the conditional title passed, there was, as against creditors, no ownership in the vendor upon which to base a lease, and the entire transaction is to be construed in accordance with the contract of September 22, 1917. That was a contract of conditional sale, under which title was not to pass until the purchase price was fully paid, and the payments were to be made through a "lease," providing for interest-bearing notes and insurance upon the machinery. The conditional sale having been consummated by delivery, the subsequent lease or hiring agreement merely evidenced the manner in which the purchase price was to be paid after the title had fully passed to the purchaser.

As it is held that the contract was one of conditional sale and not of bailment, the condition is not effectual to retain title in the vendor as against the trustee in bankruptcy. Further, the property having been attached to the real estate without the instrument being recorded, or drawn in accordance with the Pennsylvania Act of June 7, 1915 (P. L. 866), the condition that title remain in the vendor is void under that statute.

The order of the referee of November 12, 1918, is therefore reversed.

### On Hearing on Additional Testimony on Certificate of Review.

After the opinion of February 11, 1919, was filed, upon application of counsel for the claimant based upon sufficient affidavits, after argument, the case was referred back to the referee to take further testimony concerning the shipment and delivery of the machinery and the terms of acceptance of the order of September 22, 1917. When the case was originally argued upon the certificate for review, the construction of the contract between the parties depended upon the order given by the Devon Manor Corporation to the claimant for the machinery. It appears by the additional testimony taken that the order in question was mailed to the home office of the claimant at New York, and that the manager of the sales department signed the acceptance of the order as follows:

"Accepted: Troy Laundry Machinery Co., Ltd., by I. Kettle."

On the same day the claimant by letter acknowledged receipt of the order, concluding:

"Thanking you for favoring our Mr. Ryan with your order, and assuring you that same will have our prompt attention, we are very truly yours, Troy Laundry Machinery Company, Ltd., per C. H. Granberg, Sales Department."

Before any steps were taken to carry out the terms of the contract, it was marked with rubber stamps across the name of the Troy Laundry Company, "Order of" and "Notify," and further at the foot of the order "Security—Ship 'to Order.'"

It is not disputed that the stamps on the face of the order indicate that the machinery was to be shipped to the order of the Troy Laundry Machinery Company, Limited, the consignee, and notice on arrival at destination to be given to the Devon Manor Corporation. Shipment of the machinery was then directed, and on October 4th the lease contract was mailed to the Devon Manor Corporation, with the request that it be signed and returned. Three shipments were made, one from Syracuse, N. Y., upon a bill of lading dated October 2, 1917, naming the Troy Laundry Machinery Company as consignee, with notice to the Devon Manor Corporation, the other two dated November 1 and November 21, 1917, from Brooklyn, N. Y., upon bills of lading containing the same designation as to consignee and notice. The first bill of lading was mailed to the Devon Manor Corporation October 16, 1917. The other two were sent to a Philadelphia representative of the plaintiff, and held by him until the lease was executed November 26, 1917, and the first payment of $500 made. Thereafter delivery under all three bills of lading was made by the railroad company to the Devon Manor Corporation. It thus appears that, while the order of September 22d called for delivery f. o. b. New York, the terms which were actually carried out were those modifying the original order, so as to hold the property in the possession of the carrier, subject to the order of the claimant as consignee, until the contract of lease was executed. If there was a contract of conditional sale, accepted by any one duly authorized to accept it for the claimant, that contract remained executory, because there was no delivery until after the execution of the lease, and, under the authority of Stiles v. Seaton, 200 Pa. 114, 49 Atl. 774, and Goss v. Jordan, 171 Pa. 474, 32 Atl. 1031, the executory contract of sale was supplanted before delivery by the contract of bailment. But whatever modifications were made to the original order upon acceptance by the claimant were acquiesced in by the Devon Manor Corporation, as is evidenced by their conduct. The rights which pass to the trustee, therefore, arise under the bailment contract of November 26, 1917, and not under the order of September 22, 1917.

The order contained in the opinion of February 11, 1919, reversing the order of the referee, is therefore vacated, and the order of the referee affirmed, and the petition for review dismissed.