### Schmidt v. Bader.

*Practice, C. P.—Case tried by the court without a jury—Verdict—Exceptions—Act of April 22, 1874.*

1. Where a case is tried by the court without a jury under the Act of April 22, 1874, P. L. 109, no exception may be taken to the verdict.

2. In such a case, a mere "verdict" in favor of one or the other party is not a conclusion of law within the meaning of the act. A verdict is a conclusion on the facts as well as the law.

*Sales—Conditional sales—Possession—Transfer of title—Seizure by creditors of vendee—Contract.*

3. A sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, enables creditors of the vendee to seize and sell the property for the payment of his debts.

4. Where it appears that a machine was delivered under a contract which clearly established a conditional sale, the fact that tags were placed upon it inscribed with the name of the vendor as "owner or lessor" does not effect a change in the contract from one of sale to a bailment.

5. Where the vendor of a machine orders it from a manufacturer and directs it, without any reservations, to be delivered to the vendee, and the manufacturer delivers it to a common carrier, consigned to the vendee, the delivery to the carrier is a delivery to the vendee, and if the contract was a conditional sale, the title vested in the vendee, and the machine could be subsequently levied upon by his creditors.

Case tried by the court without a jury. C. P. Northumberland Co., Feb. T., 1922, No. 186.

*Knight & Taggart,* for plaintiff.

*W. H. Unger* and *W. W. Ryon,* for defendant.

LLOYD, J., June 30, 1924.—By agreement of the parties, this case was tried before the court without a jury under the Act of April 22, 1874, P. L. 109.

Schmidt v. Bader.

Agreeably to and in conformity with the requirements of said act, we filed our decision. To this decision counsel for the defendant, within the time prescribed by the act, filed exceptions.

These exceptions are thirty-one in number. The first of which is directed to the verdict; eleven others to the finding of facts—two of which were separately stated by us, five requested by the plaintiff, but refused, and four requested by the defendant and affirmed; twelve other of the assignments relate to conclusions of law—seven of which were separately found by us, one requested by the plaintiff, but refused, and four requested by the defendant and affirmed; six others relate to excerpts taken from the body of the decision, and the remaining one to the whole decision. The decision was thus made the subject of exceptions by its parts and by the whole—an assurance doubly assured. We shall consider them as above grouped.

### Exceptions relating to the verdict.

This exception may be summarily dismissed with the observation: that no exception may be taken to the verdict: Carpenter v. Yeadon, 208 Pa. 396.

### Exceptions relating to finding of facts. .

At the oral argument, counsel for plaintiff very frankly stated that they agreed to the finding of facts as correct. These assignments embrace the second, third, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, sixteenth and seventeenth exceptions, and they are, hence, dismissed.

### Exceptions relating to conclusions of law, excerpts from the decision and the decision as a whole.

The facts of the case are detailed in our decision heretofore filed and need not be repeated here. The ultimate question raised by these exceptions is whether the original contract between Schmidt and the Giles Manufacturing Company, coupled with a delivery of the machines to a common carrier, consigned to the Giles Manufacturing Company, the actual receipt, possession and use of the said machines for a period of more than two months by the Giles Manufacturing Company prior to the making of a bailment lease, is sufficient to retain title to the machines in Schmidt against the creditors of the Giles Manufacturing Company. For, admittedly, if, under these circumstances, Schmidt retained title against creditors up to the time of the making of the bailment lease, then the lease would operate so as to continue his title up to and including the date of the adjudication of the Giles Manufacturing Company as a bankrupt. On the contrary, if he lost title prior to the making of the bailment, then, there being no evidence that he ever regained it, the bailment would not be effective as against creditors of the Giles Manufacturing Company so as to restore title in him. Hence, the question may be answered by the law applicable to the facts occurring between the date of the preliminary agreement and the execution of the bailment lease.

In our decision we concluded that the most favorable construction for the claimant that could be put upon the original contract was that it was a conditional sale. There is not a single element of bailment in it, and we still adhere to our former conclusion. Nor did the imposition of the tags, inscribed "A. G. Schmidt, Owner or Lessor," upon the machines effect a change in the contract from one of sale to a bailment. These tags, when considered in connection with the testimony and defendant's letter, wherein he said, inter alia, "This lease is drawn exactly as you asked me to draw it up so far as payments are concerned. The other data in this lease is more for protection

than for anythings else," merely indicate a mode of preserving a lien until the purchase price be paid.

Upon the argument, counsel for the claimant contended that title had not passed to the Giles Manufacturing Company by delivery to the common carrier and the possession and use of the machines by the said manufacturing company, for the reason that there was no delivery with an intention to pass title, and concluded that the vendor (Schmidt) retained the same title upon which to base a bailment. If this contention and conclusion be correct, then there was no reason for the bailment at all, for the title being in Schmidt, he could have enforced his rights just as effectively under the original contract as under the bailment. Moreover, the extract from his letter, *supra*, indicates his intention.

In support of their position counsel have cited us to the case of Goss Printing Co. v. Jordan, 171 Pa. 474. In this case the court said, "Delivery does not consist in the mere transfer of location or custody of property. There must be the mind of both parties concurring in the transfer in accordance with the contract, the intent of one to deliver and the other to receive," and held that transferring the machinery and setting it up in the building of the vendee was not a delivery, for the reason that, under the terms of the original contract, the vendor could not make delivery and demand acceptance until after a thirty days' trial period, and the vendee could not demand delivery at any time without a tender of the money. And since the trial period of thirty days had not expired, there could be no intent to deliver and none to receive. In the instant case the machines never were in the possession of Schmidt. They were ordered directly from the Wildman Manufacturing Company for the Giles Manufacturing Company, and by the direction of Schmidt, who assumed payment for the same, they were delivered by the Wildman Manufacturing Company to the common carrier and consigned, without any reservations, to the Giles Manufacturing Company. This was strictly in accord with the terms of the original contract, which contemplated the delivery exactly as carried out. It is, therefore, manifest that the delivery to the common carrier was an intent to deliver to the Giles Manufacturing Company. Upon the arrival of the machines, they were taken by the Giles Manufacturing Company to its plant and by it there installed, used and operated for more than two months prior to the bailment lease. This was just what the parties had in mind when the preliminary agreement was made, to wit, the enlargement of the manufacturing plant so that more goods could be produced for Schmidt. The action of the Giles Manufacturing Company in thus receiving, possessing and using the machines evidences more than an intent to accept them; it was in legal effect an actual acceptance of the machines. It is thus apparent that the ingredients essential to a delivery, to wit, "the intent of one to deliver and the other to receive," lacking in the cited case, are present in the instant case. And the observations of the court in that case with reference to the legal effect of a delivery are applicable to the case before us. Our decision violates no principle established by it, and it may, with reason, be cited in support thereof.

It is well settled by a long line of unbroken authorities—the citation of which would be a work of supererogation—that "a sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, enables creditors of the vendee to seize and sell the same for the payment of his debts." This is the law applicable to the case before us and as applied in our decision. We have been cited to a number of cases in which the actions were between the vendor and

the vendee. Such cases have no application here, and we again repeat what we have already said, that this case must be decided by the established law in cases between the vendor and creditors of the vendee.

Further discussion of the exceptions would take us over the ground already covered by our decision. We reaffirm what we there said and adopt it, in its entirety, as a part of this opinion. We submit that there is nothing in the exceptions to justify our disturbing the verdict, and they are all, hence, dismissed.

And now, to wit, June 30, 1924, judgment for the defendant, J. H. Bader, and against the plaintiff, A. G. Schmidt, is hereby now entered in accordance with the decision heretofore filed.

An exception is noted and bill sealed for the plaintiff.

NOTE.—On some of the machines the tags were placed before delivery to the common carrier; and on others afterwards.

From C. M. Clement, Sunbury, Pa.