# Schmidt, Appellant, *v.* Bader.

*Bailment—Conditional sale—Intention—Fraud, accident or mistake, or contemporaneous agreement—Evidence—Transfer of possession.*

1. Whether a contract is a conditional sale, or one of bailment where ownership does not pass until all the conditions have been complied with, depends on the intention of the parties as expressed in their written agreement or disclosed by the evidence, unless it was entered into by reason of fraud, accident or mistake, or induced by a contemporaneous parol agreement.

2. The mere fact that possession of personal property is temporarily given to another with the privilege to buy at some future time, does not of itself show that there was a present transfer of ownership.

3. The fact that the original intention of the parties was to make a sale, and that such was the legal effect of their first agreement, does not prevent a change, while it is still executory, into a bailment with an alternative of future conversion into sale on compliance with stipulated conditions, no rights of creditors having intervened.

4. Where property is properly held under a bailment contract, the bailee may release his rights in part without affecting his claim to the balance.

*Bankruptcy—Sale of goods under bailment—Bailments.*

5. The rights of a trustee in bankruptcy are no greater than those of the creditors, and if he wrongfully sells goods held under bailment, no title passes by such sale.

Argued May 12, 1925. Appeal, No. 145, Jan. T., 1925, by plaintiff, from judgment of C. P. Northumberland Co., Feb. T., 1922, No. 186, for defendant, on case tried by the court without a jury in suit of Arthur G. Schmidt v. J. H. Bader. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Replevin. Before LLOYD, J., without a jury.
The opinion of the Supreme Court states the facts.
Judgment for defendant. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting bill of exceptions.

*Calvin F. Smith,* of *Smith & Paff,* for appellant.—The bailment contract of July 30, 1919, was the written agreement which was accepted by the original parties to the contract as a consummation and performance of the terms of the original contract between Schmidt and the Giles Manufacturing Company. The terms of this written contract undoubtedly stamped it as a contract of bailment and not a contract of conditional sale: Stiles v. Seaton, 200 Pa. 114; Federal Sales Co. v. Kiefer, 273 Pa. 42; Michael v. Stuber, 73 Pa. Superior Ct. 390.

*Charles C. Lark* and *Wm. H. Unger,* with them *Wm. W. Ryon* for appellee.—In a bailment it must appear that there was an intention to transfer the possession: Trunick v. Smith, 63 Pa. 18, 23.

But in the case at Bar, Schmidt had no possession to deliver: McFarland-Mead Co. v. Doak, 63 Pa. Superior Ct. 27.

A sale and delivery of personal property, with an agreement that the ownership shall remain in the vendor until the purchase money is paid, enables creditors

of the vendee to seize and sell the same for the payment of his debts: Brunswick v. Hoover, 95 Pa. 508.

The trustee stands in the shoes of both the bankrupt and the creditors and can enforce the rights of either: Duplex Printing Press Co. v. Clipper Publishing Co., 213 Pa. 207.

OPINION BY MR. JUSTICE SADLER, June 27, 1925:

The Giles Manufacturing Company operated a hosiery mill at Shamokin. In 1919, it desired to increase the plant, and entered into negotiations with a corporation at Norristown for the purchase of additional equipment. No satisfactory arrangements could be made as to payment, and a salesman, Schmidt, the present plaintiff, agreed to buy what was needed, with the verbal understanding that he should retain title. The purchase price was paid by him, and the fifteen knitting machines were then ordered to be consigned directly to the company, and were received by it. At the time, part were marked with permanent tags, showing the name of the "owner and lessor," and, later, the remaining ones were so identified. The actual delivery was on June 5th of the year mentioned, but no formal lease was drawn up until July 30th following, and it seems not to have been executed by the company until about two weeks later. It called for certain payments every two months, and they were made on four occasions, at the rate stipulated. An additional sum was credited on the back of the written agreement, but this apparently was to cover the cost of other machinery not included in the lease now in question. After providing for a definite rental, with the right on the part of the owner to retake possession on failure to pay, it was agreed that, upon full compliance with the stipulated terms, a bill of sale would be given if the additional sum of five dollars was paid. It is true that the checks for rent in three instances had noted upon them the statement that they were given each in payment of one machine, but this fact in itself would

not affect the title of the lessor. There is no reason why there could not be a release of his rights in part of the property without affecting his claim to the balance, if properly held under the bailment contract.

There is nothing to show any creditors were misled by the company's possession of the machines between June 5th and July 30th, when the understanding of the parties was put in written form, and the bankruptcy which followed was not until two years later. The trustee appointed claimed title, and the lessor instituted a reclamation proceeding in the United States District Court, which was finally dismissed on appeal, without prejudice to his right to arrest title in the appropriate state tribunal. This action of replevin, brought against the purchaser at the bankrupt sale, was heard by the court below without a jury, and findings of fact were reached, as well as conclusions of law. Judgment was entered in favor of defendant, based on the theory that the transaction was a conditional sale, as shown by the consignment directly to the now insolvent company, and the delivery of the machines to the carrier in its name. This led the court to the conclusion that the title passed immediately to the manufacturing company, and that the lease, executed some weeks after, was ineffective, though in accordance with the verbal agreement of the parties, entered into when the purchase was made by Schmidt. Under the findings, there can be no doubt the plaintiff paid for the knitting machines in question, and that there was an understanding the title should be held by him, and that a bailment contract should be executed for his benefit. The record, as before noted, does not show any creditors were injured by reason of the delay in the execution of the written paper, signed later, and we cannot agree with the learned court below that the case, upon which its decision rests (In re Devon Manor Corp., 257 Fed. 766), makes necessary a holding to the contrary.

There can be no question but that, if the transaction between the parties constitutes a conditional sale, the rights of creditors will attach, though an effort had been made by the vendor to retain a lien for the purchase price, and such claim may be enforced by execution (Duplex Printing Co. v. Clipper Pub. Co., 213 Pa. 207) ; though, as against the vendee, the understanding entered into will be sustained. So, receivers or trustees in bankruptcy may intervene on behalf of those whom they represent: General Elec. Co. v. Richardson, 233 Fed. 84; In re Mina, 270 Fed. 969. Whether the contract is of that character, or a bailment, where ownership does not pass until all of the conditions have been complied with, depends on the intention of the parties as expressed in their written agreement or disclosed by the evidence.

The mere fact that possession of the personal property is temporarily given to another, with the privilege to buy at some future time, does not in itself show that there was a present transfer of ownership. "The purpose of the parties was to effectuate a sale in the future directly to the bailee, who was to have actual possession in the meantime under a different arrangement, and we gave it our sanction as against creditors of the bailee because of the contract. In other words, although the intent of the parties, and the effect of their agreement, was to vest the title at a future day in the purchaser, he having actual possession in the meantime, yet as the intervening arrangement was upon a valid contract of bailment as between the parties, the title of the bailor was preserved until terminated by compliance with the provision for a sale, at which time that portion of the agreement became operative": Brown Bros. v. Billington, 163 Pa. 76, 80, following Rowe v. Sharp, 51 Pa. 26.

In the present case, we find the plaintiff purchased the machines in good faith, with the understanding that they should be sent directly to the company, and his ownership be protected by an agreement to be subse-

quently executed. That a lease was intended is plainly shown by the fact that, when forwarded, part, and subsequently all, had attached thereto plates naming him as "owner and lessor," and the contract, when signed shortly thereafter, set forth in plain terms that it was a bailment. Though the intention of the parties controls, in determining the effect of the transfer, yet the best evidence of the real understanding is the writing itself. There is no suggestion that the paper here offered, which plainly states that the property "was leased," was entered into by reason of any fraud, accident or mistake, or induced by any contemporaneous parol agreement. The only fact which might lead to a contrary thought is the endorsement found on three of the lessee's rental checks, indicating that it believed the payment of each installment meant the release of one machine from the control of the bailor.

The learned court below was of opinion that the ownership passed immediately to the manufacturing company upon the delivery to the carrier, it having been named as the consignee. It is true, as a general rule, that a delivery of goods to a railroad in conformity with the contract of sale is sufficient to pass title to it: Pittsburgh P. & P. Co. v. Cudahy Packing Co., 260 Pa 135. In the present case, the sale was not made to the corporation, though it had sought to purchase, but to Schmidt, who paid the consideration, and gave the direction as to shipment. Even if he had intended to sell originally when the machinery was forwarded on June 5th,—though the record would not justify this finding,—there would have been no reason why he, as the purchaser and owner, could not have made some other arrangement, prior to the intervention of the rights of others. "The fact that the original intention of the parties was to make a sale, and that such was the legal effect of their first agreement, does not prevent a change, while it is still executory, into a bailment with an alternative of future conversion into sale on com-

pliance with stipulated conditions": Goss Printing Co. v. Jordan, 171 Pa. 474, 477. "While the sales proposals remained executory, it was competent for the parties to change them to bailment leases, and, having done so, the latter became the actual final agreements": Federal Sales Co. v. Kiefer, 273 Pa. 42, 44; see also Stiles v. Seaton, 200 Pa. 114; Michael v. Stuber, 73 Pa. Superior Ct. 390; Byers Machine Co. v. Risher, 41 Pa. Superior Ct. 469. As already noted, the manufacturing company was not declared a bankrupt until January of 1921, and the only interest the trustee could sell was the equity which the corporation might have by virtue of the payments under the lease. It was in default, however, and the lessor and present plaintiff had the right to demand a return of the property involved in the present action of replevin. The rights of the trustee in bankruptcy were not greater than those of the creditors, and his sale passed no title to the machines held under the bailment contract. It follows that plaintiff's claim must be sustained.

The judgment is reversed, and is here entered for the plaintiff.