S. F. Bowser & Co., Inc., *v.* Franklin Mortgage & Investment Co., Appellant.

460

Argued October 9, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Jacob A. Markel,* for appellant.—The contract was not a bailment: Ott v. Sweatman, 166 Pa. 217; Root v. Acceptance Corp., 279 Pa. 55; Bank of Secured Savings v. Rudolph, 83 Pa. Superior Ct. 439.

The delivery of goods under a bailment lease contract for purposes of resale is ineffectual to preserve title in the bailor as against a third party: Hoeveler v. Motor Sales, 92 Pa. Superior Ct. 425, 429; Stern & Co. v. Paul, 96 Pa. Superior Ct. 112, 116.

The plaintiff is estopped to set up its title to the equipment: O'Connor v. Clark, 170 Pa. 321; Leitch v. Truck Co., 279 Pa. 160; Commercial Motor Mortgage Co. v. Waters, 280 Pa. 177; P. R. R. Co.'s App., 86 Pa. 80; Hottenstein v. Lerch, 104 Pa. 454; Maul v. Ryder, 59 Pa. 167; Jacques v. Weeks, 7 Watts 261, 267.

The measure of damages is the value of the goods at the time of the issuance of the writ of replevin plus damages for detention: Johnson v. Groff, 22 Pa. Superior Ct. 85; Duroth Mfg. Co. v. Cauffiel, 243 Pa. 24.

The burden of proof is on plaintiff to prove the damages sustained, and this proof must be based on a foundation of competent evidence: Bigham v. Rys., 223 Pa. 106, 113; McGonigal v. Rys., 243 Pa. 47.

*Edward G. Bothwell,* of *Morris, Walker, Bothwell & Harrison,* for appellee.—Under the law and the evidence in this case in support of the verdict, plaintiff's title is good as against that claimed by defendant: Heisley v. Mfg. Co., 33 Pa. Superior Ct. 218; Lecky v. Mfg. Co., 8 S. & R. 500; Leitch v. Motor Truck Co., 279 Pa. 160; Riccardi Motor Co. v. Weinstein, 98 Pa. Superior Ct. 41; O'Connor v. Clark, 170 Pa. 318; McLaughlin's Est., 280 Pa. 597.

Under the facts in this case and the manner of its submission to the jury, no reversible error exists in the case in respect to the money part of the judgment: Beloit I. Works v. Lockhart, 294 Pa. 376; Collins v. R. R., 171 Pa. 243; Lovett v. Mathews, 24 Pa. 330, 333; Messmore v. Morrison, 172 Pa. 300, 304; O'Toole v. Printing Co., 179 Pa. 271, 276; Gorman v. Bigler, 8 Pa. Superior Ct. 440, 445; Silver Costume Co. v. Passant, 71 Pa. Superior Ct. 252, 255.

OPINION BY MR. JUSTICE SCHAFFER, November 23, 1931:

This is an action of replevin brought by S. F. Bowser & Company, Inc., to recover from defendant possession of gasoline pumps and accessory equipment installed in a building erected and owned by the latter, and leased by it to the United States Post Office Department, for a garage. Defendant gave a counterbond and retained the articles. The case proceeded to trial and plaintiff recovered a verdict for $4,446, upon which judgment was entered, from which defendant appeals.

S. F. Bowser & Company manufactured and installed the appliances in question. Alexander Laub was the general contractor for the erection of the building for defendant. The specifications for it called for the equipment which is the subject of this suit. It was furnished by Bowser & Company to Laub under a written contract, in form one of bailment, but with some quite remarkable features. In the first place, Bowser & Company knew that the appliances were to go into the building, part of them to be permanently attached to it. So far as these consisted of pipes cemented into the structure, they are not included in the writ. The contract itself starts off as an order from Laub to Bowser & Company to "Please manufacture and ship" the equipment required by the building specifications. Under the heading "Terms" it recites "30 days net from date of shipment, 1% 10 days." Following this, it reads: "Said lessor hereby leases unto said lessee the articles above enumerated, for a term of 30 days from shipment; rental for said equipment to be paid by said lessee as hereinafter provided." It stipulates that the articles "are to be affixed" to the premises. It provides that the equipment shall not be sublet to any other person without the consent of Bowser & Company. In the order part of the contract, the total price of the equipment was set forth as $3,952. In the contract, no partial payments are stipulated for by way of rental, lines were drawn

through the provisions in the form for these and the only sum named to be paid was the entire price of the articles, $3,952. The district manager of Bowser & Company in the letter in which he transmitted the contract to Laub for signature referred not to the rental of the equipment, but to the "price" of it. The president of defendant, Robinson, in writing to plaintiff before it accepted the order, relative to the reliability of Laub, spoke of the merchandise "which you sold to him." In the invoice statement accompanying the shipment rendered by Bowser & Company to Laub, the language used was "Sold to Mr. Alexander Laub." We think these papers taken together give strong color to the conclusion that the actual transaction was a sale under the guise of a bailment.

The building contract between defendant as owner and Laub provided that he was to be paid for the construction of the building complete, including the gasoline equipment, $208,000. It is undisputed that the entire sum due was paid to him or his surety, who on his default had to complete the job. Laub did not pay Bowser & Company. It is the contention of plaintiff that it bailed the equipment to Laub and did not sell it to him, and furthermore, that appellant through its president, Robinson, knew the transaction was a bailment and not a sale.

Many transactions, not so in actuality, have been given the form of bailments in the express agreements between the parties. The courts have been and should be alert to see just what the realities are. Our policy is against secret titles reserved to vendors of personal property when the outward evidences indicate that ownership has passed out of them. In Ott v. Sweatman, 166 Pa. 217, a case not very dissimilar from the one at bar, there was an agreement in writing between a manufacturer and the owner of a brewery for the erection of an ice machine on foundations to be built by the owner, who was to pay the manufacturer a certain sum of money

in stipulated installments. There was an express condition in the contract that the title, ownership, and possession of the machinery did not pass until all the payments had been made. When the last one should be received, the manufacturer convenanted to give the brewer a bill of sale. It was stipulated that the contract was not one of sale, conditional or otherwise. The manufacturer claimed it was a bailment, but we decided otherwise, that in determining whether a contract is one of bailment or of sale, with an attempt to retain a lien for the price, we would not consider the name given to the contract, but what was its essential character. Adopting the language used by the court below, which was taken from our opinion in Brunswick & Balke Co. v. Hoover, 95 Pa. 508, 513, we said: "There is not a single element of bailment in this transaction. It is immaterial what the parties call it; the law pays little heed to the label; it looks beneath and examines the nature and character of the contract between the parties." In Root v. Republic Acceptance Corp., 279 Pa. 55, 57, we substantially repeated our prior views and said that we "will look through the screen of paper titles to ascertain what was the real situation."

Applying this test of the realities of the situation to the controversy before us, we have no difficulty in reaching the conclusion that the transaction was not a bailment. The term of the so-called bailment was for thirty days, and it had expired before delivery of the articles was made and before plaintiff itself installed them. The so-called rental, which was only a single payment, has all the appearance of the contract price for articles sold. Part of the equipment, consisting of twelve or fifteen hundred feet of pipe, was to be cemented into the building; all of it was essential to the use to which the building was to be devoted. The property was passing to a contractor who was engaged in erecting the building and the vendors knew that this was his relation to the undertaking, and that the articles were not for his

use. In effect, the articles were passing to the contractor for the purpose of resale, as they were to be incorporated in the building which he was constructing for another. "By its very terms it [a bailment lease] contemplates a possession by the bailee for use, not for sale. ...... A [vendor] cannot deliver......any......kind of property, to [another] for the purpose of having the latter sell [it], and at the same time tie up the title, as respects a purchaser from the [vendee], by executing a bailment for [its] use. He cannot use this form of security for a transaction which contemplates a sale by the so called bailee, and make the purchaser an unwitting guarantor of the credit [of the so-called bailee]. ...... A bailment for use is inconsistent with a delivery for sale": Hoeveler-Stutz Co. v. Cleveland Motor Sales, 92 Pa. Superior Ct. 425, at page 429. "A delivery for sale is incompatible, as respects a purchaser from the consignee, with a bailment for use. An owner of goods cannot deliver them to a dealer for sale and secure the price by a bailment for use. The transaction, as a whole, confers authority on the dealer to make the sale and pass the title to the purchaser": Hoeveler-Stutz Co. v. Bodman & Royer, 92 Pa. Superior Ct. 433, at page 436. "The mere use of the words 'bailment' and 'lease' will not prevent a court from looking at the real nature of the transaction and declaring that an agreement purporting to be a bailment is really a conditional sale: Kelly Springfield Road Roller Co. v. Spyker, 215 Pa. 332. ...... It is important that the bailment should be for use and not for sale": Stern & Co. v. Paul, 96 Pa. Superior Ct. 112, 115. See also 26 Corpus Juris 689.

The defendant, having paid in full under the terms of its contract with Laub, is a purchaser for value of all the equipment which was installed in the building by the general contractor. "When goods are delivered under a conditional sale contract and the seller expressly or implied consents that the buyer may resell them prior to the performance of the condition, the reservation of

property shall be void against purchasers from the buyer for value in the ordinary course of business, and as to them the buyer shall be deemed the owner of the goods even though the contract or a copy thereof shall be filed according to the provisions of this act": Conditional Sales Act of May 12, 1925, P. L. 603, section 9.

It is at least doubtful whether bailments of articles which are an essential part of the completed structure can be made to a contractor who is erecting a building. If such contracts are to be sustained, then when the contractor has completed the building and has not paid his bailors, they can by means of writs of replevin dismantle it. Our minds are not free from doubt on the question not necessary to be decided in this case, whether a writ of replevin lies for articles such as those covered by the writ in this case devoted to the purposes in the building for which they were used.

The only question which was submitted by the trial judge to the jury for its finding was whether the president of the defendant, Robinson, had notice of the reservation of title to the equipment by the plaintiff. The contention that defendant knew that title had been reserved is based upon the circumstance that the sales agent of plaintiff, who was endeavoring to sell the equipment, thought in the first instance that defendant was going to purchase it, and had some discussion with Robinson, in the course of which the witness said Robinson took the order book (form of contract) and looked at the order and inquired whether the equipment was that called for in the specifications, which the witness assured him it was. Asked how long Robinson had the paper in his hands for examination, he replied "Say five minutes or so, maybe a little longer. It would be hard to say at this late date. I know he had the order and read the equipment that was on there and then he told me that he would not be able to sign the order, that the order would have to be signed by Mr. Laub in Pittsburgh." It will thus be seen that all that the witness

was positive Robinson read was the part of the paper setting forth the equipment. This with other details takes up almost two pages of the printed record before us, and the bailment part of the paper covers more than five. In the original it was in small type. We think this testimony not adequate to show that Robinson understood that the transaction was a bailment, in the face of his denial that he had ever seen the contract and coupled with the fact that, shortly afterwards, and before plaintiff had accepted the order from Laub, Robinson wrote a letter to plaintiff in which he referred to the equipment as "merchandise which you sold to him" [Laub]. In his charge to the jury, the trial judge said: "He [the witness] did not say, as I understand it, that Mr. Robinson necessarily read all that fine print, it contains the terms of the lease, etc., but he did look at it and discussed with him the contents of the document as to the equipment that was involved, whether it contained it all he did not know."

Everything connected with the transaction except the form of contract used indicates that the parties never really intended a bailment of the equipment, but its sale: The fact that there was but one payment, which was the entire purchase price; and that there was a discount on this, if paid within ten days; the limited time of payment, only thirty days; the installation of the articles in the building by the plaintiff itself after the expiration of the period of the bailment; part of them, twelve or fifteen hundred feet of pipe, permanently imbedded in concrete and in the walls of the building—all these things savor of a sale and not a bailment. "While, therefore, it is easy enough to make an agreement speak as a lease or a bailment, where that was what was actually in the mind of the parties, where the fact is that the one desires to sell and the other to buy, the attempt to have the arrangements masquerade in writing as something else is very likely to fail": Bank of Secured Sav-

ings v. Rudolph, 83 Pa. Superior Ct. 439, 443, quoting In re Morris, 156 Fed. 597, 598.

If transactions such as this are to be upheld as bailments, there is no protection afforded owners by the filing of no lien contracts. If the main contractor does not pay subcontractors then the owner must, or have his building dismantled.

The judgment is reversed and is here entered for defendant.