Valicenti *v.* Central Motors Inc., Appellant.

Argued May 7, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John A. Metz,* for appellant.

*G. Malcolm McDonald,* for appellee.

Opinion by Keller, J., October 3, 1934:

Carmela Valicenti brought this action of trespass in the county court of Allegheny County to recover damages for the unlawful conversion of her automobile by the defendant. She recovered a verdict on which judgment was duly entered. Defendant appealed.

Four issues of fact were raised by the evidence: (1) Was plaintiff the owner of the automobile? (2) Did

she make a tender to defendant of the balance due on the automobile? (3) Had defendant repossessed itself of the automobile before the tender was made? (4) The damages she suffered by the unlawful conversion, if there was one. But only one substantial question of law was involved, viz., whether plaintiff's ownership was sufficiently proved to sustain the action.

On this the plaintiff averred in her statement that on or about April 1, 1932 she was the owner of a certain Hupmobile sedan automobile, bearing Serial No. L-11507, Motor No. 11643. In its affidavit of defense, filed under the rules of the county court—the Practice Act of 1915, P. L. 483, is limited by its title and terms to practice in the courts of common pleas—the defendant admitted "that the plaintiff was the owner of that certain Hupmobile sedan, described in the plaintiff's statement of claim," but averred "that such ownership was subject first to the lien of a certain bailment lease agreement existing between the said plaintiff and the defendant corporation, a true and correct copy whereof is hereto annexed, marked Exhibit 'A' and made a part hereof." By rule 12 of the county court, averments in the plaintiff's statement in actions of trespass as to the ownership of the vehicle involved are taken to be admitted unless denied, and matters expressly admitted are not put in issue.

The evidence showed that plaintiff's husband, Frederico Valicenti, had negotiated with the defendant for the purchase of this automobile on June 16, 1931 for $1,450; that not having the full purchase price available he made a down payment of $1,200 and executed a bailment lease to the defendant by which he agreed to pay "the balance, $250, in three monthly instalments of ...... dollars each, secured by a judgment note, payable to the order of the bailor;" that

on December 17, 1932, when this balance had been reduced to $200, defendant agreed that Valicenti might transfer to the plaintiff his interest in the car, and thereupon defendant executed a bailment lease for the car to the plaintiff for the period of four months, for which plaintiff agreed to pay, for rent and use of the same, $200 payable in four monthly instalments of $50 each, secured by a, judgment note payable to the order of bailor. Both bailments provided for the sale of the car to the bailee, after all instalments had been paid, for one dollar. The term of this second bailment lease extended to April 17, 1932, but .the judgment note, given as security, was made payable in sixty days. At the expiration of this date, (60 days), plaintiff paid $40, and gave a new judgment note, with her husband as surety, for $160, payable in thirty days, or a month before the last instalment of rental was due and payable. Plaintiff contended that this second note was given by her and accepted by defendant in *payment* of the balance due by her under the lease. The evidence is not as strong as it might be, but there are circumstances in connection with it that the jury might take into consideration. While the original contract with Frederico Valicenti was one of bailment in form, he made a down payment of over four-fifths of the purchase price of the car, and the 'rental' called for was the balance of the purchase money, $250, payable in three months. See Bowser v. Franklin Mortgage & Investment Co., 305 Pa. 459, 158 A. 170, as to the right to inquire into the real nature of the contract in such cases. When his interest in the car was transferred to his wife, the plaintiff, and a bailment lease given for four months,—expiring April 17, 1932—the judgment note taken as security under the contract did not run to the expiration of the term, but was payable in sixty days, and when

it fell due, demand was made on behalf of defendant, not for the rental which had accrued for two months, but for the entire amount. Pursuant thereto plaintiff paid $40 and gave the new judgment note, with her husband as surety, for $160, payable in thirty days, or a month before the term of the lease expired, and when it fell due, defendant made demand, not for the instalments of *rental* then due and payable under the lease, but for the entire note, $50 of which, under the bailment, was not due until the expiration of the term, a month later. But apart from these circumstances, there was other evidence of plaintiff's title to the automobile, arising out of the facts in connection with the tender hereinafter referred to, sufficient to take the case to the jury.

The plaintiff and her husband testified that on March 28, 1932 the automobile was delivered to the defendant to have some carburetor trouble fixed. Defendant's witnesses did not deny this, but on the contrary admitted that the carburetor had been leaking and that they had repaired it.

There is no dispute that previous to this date, March 28, 1932, defendant had not availed itself of its right under the bailment lease to repossess itself of the car for default in payment of rental; nor is it averred by defendant that when so delivered to it for repairs, it refused to accept the car for repairs and claimed the right to repossess and hold it for default in rental. The delivery on March 28, 1932 was by virtue of a *locatio operis faciendi,*—using the old terms, which better describe the object of the bailment by plaintiff to defendant,—for such it was—a bailment to have work and labor, by way of repairs, performed or bestowed upon it: 6 Corpus Juris 1100, sec. 16-B; 3 R. C. L. 79, sec. 8. Such a bailment imposed on the bailee in this particular *locatio*, the defendant,—the

obligation, inter alia, "to surrender the property on which the labor has been expended, on payment for the work done": Zell v. Dunkle, 156 Pa. 353, 357, 27 A. 38.

With affairs in this situation, defendant on April 6, 1932 wrote plaintiff a letter, as follows: "This is to advise you that Hupmobile Sedan, Serial No. L-11507, Motor No. 11643 which we leased to you under date of December 17, 1931 for the sum of $200, and which lease is now in default, will be considered repossessed and sold by us at the best price obtainable unless we are in receipt of remittance in full within the next three days."

Plaintiff produced evidence that on April 9, 1932, within the three day limit fixed in this letter, her husband, on her behalf, tendered the defendant payment in full of the note and interest, and charges for repairs, and demanded the delivery of the car; which defendant's manager refused and said it was too late; that defendant had repossessed itself of the car, because of plaintiff's default, and intended to keep it. In corroboration of this evidence it was shown that plaintiff's attorney,—who did not represent her at the trial—went on the morning of April 9, 1932 to discuss the matter with defendant's manager and was then informed that it was too late to pay the balance due, that defendant had repossessed itself of the car; following which he instructed Mr. Valicenti to make the tender and saw he had $175 in cash to do so. The application made by defendant to the Department of Revenue for a new certificate of title, which was signed and sworn to by defendant's manager, Myers, on April 11, 1932, set forth that the car had been repossessed by defendant on April 8, 1932, which was in consonance with his testimony when called by plaintiff on cross-examination, that defendant took the car

back into its possession and claimed ownership on "approximately April eighth" (13-a).

Defendant's manager, on the trial, denied that plaintiff's husband ever made a tender of the balance due; or that he told plaintiff's attorney on the morning of April 9, 1932, that it was too late to pay the balance due, that they had repossessed the car; and, when called in chief by defendant, denied that the car was repossessed until after April 9, 1932. His evidence was evasive and contradictory, and we are not surprised that the jury did not believe him.

The provision in the bailment lease authorizing the bailor, in case default was made in the payments called for in the lease, to retake and repossess itself of the automobile, was inserted for the protection of the lessor, and required affirmative action on its part to terminate the lease, which, by its terms, ran until April 17, 1932: Craig v. Cosgrove, 277 Pa. 580, 584, 121 A. 406; Brodsky v. Bell, 79 Pa. Superior Ct. 36, 39. "The provision in such lease rendering it null and void for failure to pay the rent as stipulated is for the protection of the lessor, and to terminate the lease by reason thereof required affirmative action on his part. Notwithstanding the failure to pay the rent the tenancy continues until he declares the forfeiture: [citing cases]. If before the lessor takes action in the matter the rent so in arrear be paid or tendered it heals the breach and saves the tenancy: 18 Am. & Eng. Ency. of Law (2d Ed.), 389 . . . . . . It may be stated as a rule of law, that, when a tenant defaults in the payment of rent under a lease giving a right to a landlord to declare it forfeited for this reason, if, before a forfeiture is declared by the landlord, the money or rent due is paid or tendered by the tenant, the right to take advantage of the default as a forfeiture has passed": McKean Nat. Gas Co. v. Wolcott, 254 Pa. 323, 326, 327,

98 A. 955. Defendant also had the right, under the lease, to enter judgment on breach of any covenant, for the entire amount of rental payable for the full term, but it could not repossess itself of the car, in advance of the end of the term and also collect the rental accruing after such repossession: Greco v. Woodlawn Furniture Co., 99 Pa. Superior Ct. 290, 292; Grakelow v. Kidder, 95 Pa. Superior Ct. 250, 255, 256; Lukac v. Morris, 108 Pa. Superior Ct. 453, 455, 164 A. 834. The bailor may not lull the bailee into inaction by fixing a date, within which the latter must pay the back rental, and then attempt to forfeit the lease and repossess itself of the bailed article before the expiration of the time fixed: Rea v. Eagle Transfer Co., 201 Pa. 273, 276, 50 A. 764; Bergdoll v. Spalding, 234 Pa. 588, 589, 83 A. 427. It must not act unconscionably: Thompson v. Christie, 138 Pa. 230, 20 A. 934.

A bailment lease has long been a legal method in force in this Commonwealth, by which one desiring to purchase an article of personal property, but unable to pay for it at the time, may secure possession of it, with the right to use and enjoy it as long as he pays the stipulated 'rental,' and the further right to become the absolute owner, on completing the instalment payments called for in the lease, by payment of an additional sum which may be nominal in amount: General Motors Acceptance Corp. v. Hartman (Gilfillan, Appellant), 114 Pa. Superior Ct. 544, 174 A. 795; Schmidt v. Bader, 284 Pa. 41, 45, 130 A. 259; Brown Bros. v. Billington, 163 Pa. 76, 80, 29 A. 904; Jones v. Wands, 1 Pa. Superior Ct. 269, 275. The law, in such case, recognizes that the ultimate intent of the contract is a sale, to take effect, however, and become operative as such, only when the provisions relative to the bailment have been complied with: Brown Bros. v. Billington, supra, p. 80; Schmidt v. Bader, supra, p. 45. In the meantime it will not countenance any

unconscionable conduct on the part of the bailor by which the bailee is unjustly deprived of his interest in the property. The bailor may pursue the strict letter of his contract and retake possession of the bailed article on default in payment of 'rental,' if the contract so provides, and he has not lulled the bailee into inactivity; but if before the bailor has acted and repossessed himself of the bailed property because of the bailee's default, the latter tenders all payments and charges due under the bailment, the bailor will not be allowed to refuse the tender and declare a forfeiture which was the result of his own refusal to accept the payments tendered. The principle is well expressed by Mr. Justice KEPHART, speaking for the Supreme Court, in White Co. v. Union Transfer Co., 270 Pa. 514, 516, 517, 113 A. 432, as follows: "Appellee urges the small item of interest and transfer charge cannot be set up as a breach, as the former was paid and tender of both these sums was, and is now, made, though appellant refused to state the balance due on this account. If these facts are correct, while we have no intention to rewrite the terms of the bailment, the evident purpose of which is generally very well known, nevertheless appellant may, by its conduct, present such circumstances as would estop it from asserting a breach,......and, although courts will uphold these contracts, they will not permit them to become instruments of oppression through the unconscionable acts of bailors......if all payments and charges have been tendered, and appellant failed or refused to accept and formally convey, the bailor will be estopped from asserting as a breach the bailee's refusal to perform, what the bailor, through its own fault, has refused to accept performance of. Its own wrongdoing cannot enure to its own benefit, and title will pass without the formality of a transfer."

Applying the language in that opinion to the facts

in this case, if this appellant had not repossessed itself of the automobile in suit for default in payment of instalments by April 6, 1932,—as seems to be undisputed—and on April 6, 1932, wrote plaintiff that the automobile would be repossessed because of such default, unless remittance in full was made within the next three days—as is admitted—then if plaintiff, by April 9, tendered defendant the full balance due it on the car, and the charges for work done on the carburetor, defendant could not lawfully refuse the tender and repossess itself of the car because of a breach caused by its own act; nor could it lawfully repossess itself of the car before the expiration of the three day period which it gave the plaintiff in the letter; and if such tender was made and refused, title will pass to the plaintiff, sufficient to sustain this action, without the formality of a transfer. After notifying plaintiff that she must pay the entire amount due to the end of the term, by April 9, 1932, the defendant could not conscionably repossess itself of the car before the expiration of the time fixed by it, nor refuse to accept the balance when tendered during that time.

The questions (1) whether plaintiff tendered the balance due under the contract on April 9, 1932, and demanded the car, and (2) whether defendant's manager refused to accept the tender and deliver the car, stating that defendant had repossessed itself of the car the day before, were pure issues of fact for the jury. If resolved, as they were, in favor of the plaintiff, they justified a finding that defendant had unlawfully converted the car on April 9, 1932 and warranted a verdict for the plaintiff.

If the question of ownership was resolved in favor of the plaintiff, the court's instructions as to the measure of damages in case of an unlawful conversion of the automobile were correct. She was in such event

entitled to the fair value of the car, at the date of conversion, less the amount due the defendant at that time. The jury fixed the value of the car at $1,015 and found a verdict in favor of the plaintiff for $854. There was evidence to support the finding. We will not disturb it.

The alleged impropriety in the closing address of plaintiff's counsel to the jury was cured by the admonition of the trial judge to the jury to disregard it. It was not of such a character as to *require* the withdrawal of a juror.

The assignments of error are overruled and the judgment is affirmed.