## In re ROBINSON et al.
### No. 20895.

District Court, E. D. Pennsylvania.
Feb. 5, 1941.

Levi, Mandel & Miller, of Philadelphia, Pa., for petitioner.

Nathan I. Miller, of Philadelphia, Pa., for trustee.

GANEY, District Judge.

This is a review of the order of the Referee dismissing the claim of the petitioner in a reclamation proceeding. The petitioner asks to have awarded to it, the proceeds of certain machinery used in the manufacturing of furniture, of which it alleges it was owner, and merely gave to the bankrupts, the possession and right of user. The petitioner asserts its right under a certain written agreement with the bankrupts dated June 18, 1938, which it maintains is a bailment lease and that all the machinery comes within the scope of this written agreement and should accordingly be returned to it.

The testimony shows that Louis Dickman for about ten or twelve years prior to the spring of 1938 was engaged in the business of manufacturing furniture, and about that time his wife, Anna Dickman, registered the business under the Fictitious Name Act, 54 P.S.Pa. § 21 et seq., in her name, trading as the Emerald Furniture Manufacturing Company. The record discloses no consideration for the transfer of the business from Louis Dickman to Anna Dickman. The business was conducted under this arrangement with her husband, Louis Dickman, acting as manager until June, 1938, when the business was turned over by her to the partnership of Louis Dickman, her husband, and Jack W. Robinson, the bankrupts herein, who also traded under the name of Emerald Furniture Manufacturing Company. Anna Dickman by reason of certain purchases of lumber from Bright-Brooks Lumber Company was unable to make payments thereon, and accordingly on April 8, 1938, gave a bill of sale to the Bright-Brooks Lumber Company and John Cockey & Sons, covering all the machinery in the place of business, which it is agreed, was machinery which had been there, and used by her husband, Louis Dickman, prior to her registration under the Fictitious Name Act. The Bright-Brooks Lumber Company then gave to Anna Dickman a bailment lease under which she was to have possession of the machinery with title thereto remaining in the lumber company. There was never any change of possession from Anna Dickman to Bright-Brooks Lumber Company and the agreements were executed between them with the possession of the machinery in Anna Dickman. In July, 1938, the machinery was moved from Emerald Street where Anna Dickman and the bankrupts had formerly conducted the business to 3112-16 North 17th Street.

The testimony shows that the machinery was transferred from the place on Emerald Street, where Anna Dickman and the bankrupts had formerly conducted the business, to the bankrupts' new place of business on North 17th Street at the direction of the Bright-Brooks Lumber Company. The record also discloses no consideration moving to Anna Dickman for the transfer of the business to the bankrupts, Louis Dickman and Jack W. Robinson. Before the bankrupts moved from Emerald Street to 3112-16 No. 17th Street, and while the record does not give the exact date, it was a comparatively short time after they took the business over from Anna Dickman, a writing was entered into between the Bright-Brooks Lumber Company and the

bankrupts dated June 18, 1938, the construction of which is determinative of the rights of the parties.

The Referee found as a fact that since no consideration was shown for the transfer of the business from Louis Dickman to Anna Dickman, that she had no title to convey to the Bright-Brooks Lumber Company by the alleged bill of sale of April 8, 1938, and accordingly the Bright-Brooks Lumber Company took no title which they could retain, and as a result, could give to Anna Dickman no possession or right of user; that as a consequence the attempt by the Bright-Brooks Lumber Company to enter into the agreement of June 18, 1938, was null and void, and accordingly the trustee of the bankrupts was entitled to administer the proceeds of the machinery. The petitioner or claimant contends that as between Anna Dickman and the Bright-Brooks Lumber Company, since she was the owner of the business, inter se, the parties could make whatever arrangement as to title they wished; that as to the rights of creditors or purchasers for value a different question would be raised, but that no question of this kind was involved here. The Bright-Brooks Lumber Company it contends having title, entered into a valid bailment lease between itself and the bankrupts, and that since it is a valid bailment lease under the laws of Pennsylvania, the trustee in bankruptcy has no right to the possession of the machinery or its proceeds.

■ Before determining the construction to be placed on the agreement of June 18, 1938, I believe that the position of the Referee that the Bright-Brooks Lumber Company had no title to the property in question in order to execute a valid bailment lease to the bankrupts is a sound one. The Court it is felt should look behind the screen of these transactions and reach the true intention of the parties, and when this is done, it is evident that the real party in interest throughout the transaction was Louis Dickman, and that the registration of the business in his wife's name by Louis Dickman, during which time the testimony shows he managed the business, and the attempt by his wife, Anna Dickman, to convey title to the machinery by a bill of sale to the Bright-Brooks Lumber Company, the execution of an alleged bailment lease by it back to his wife, during which time the possession of the machinery remained with his wife, and the execution of an alleged

bailment lease from the Bright-Brooks Lumber Company to the bankrupts, was merely a ruse to evade creditors. It is also significant that the only contribution by way of capital Jack W. Robinson gave to the partnership, was his experience.

The transfer of part of the machinery in question from Anna Dickman to the bankrupts, even though at the direction of the Bright-Brooks Lumber Company, was in reality a transfer of Louis Dickman's machinery and no arrangements between Anna Dickman and the Bright-Brooks Lumber Company could defeat the right of the trustee in bankruptcy, who under Section 70, subsection c, of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, is clothed with the powers of an execution creditor, to wit: "The trustee, as to all property in the possession or under the control of the bankrupt at the date of the bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists".

■ However, under the construction which I give to the agreement of June 18th between the Bright-Brooks Lumber Company and the bankrupts, assuming without admitting that the Bright-Brooks Lumber Company had title to the machinery, it effectuated a conditional sale which the vendor could not assert against the trustee in bankruptcy, since the conditional sales agreement was not recorded in accordance with the Statute in Pennsylvania. In re Press Printers & Publishers, Inc., 3 Cir., 23 F.2d 34. While I am not unmindful that bailment leases have had a long history in Pennsylvania commercial transactions, and that a valid bailment lease may still be executed in Pennsylvania since the adoption of the Conditional Sales Act of May 12, 1925, 69 P.S.Pa. § 361 et seq., because it does not effect the rights of parties to a bailment lease; General Motors Acceptance Corp. v. Hartman et al., 114 Pa. Super. 544, 174 A. 795, and further that this Circuit has upheld and followed the rules of the State Court with respect thereto; General Motors Acceptance Corp. v. Horton, 3 Cir., 85 F.2d 452, yet I think a fair construction of the agreement shows the same to be a conditional sales contract.

In Valicenti v. Central Motors, 115 Pa.Super. 74, 174 A. 799, the Court states that a bailment lease was a legal method by which one desiring to purchase an article but unable to pay therefor at the time, may secure possession thereof with the right to use and enjoy it as long as he pays stipulated rentals and becomes absolute owner after complete installment payments, on payment of an additional sum which may be nominal.

In Restatement, Conflict of Laws, § 272(A), a conditional sale as the words are used in the Restatement of this Subject is a sale under which possession is delivered to the vendee at a subsequent time upon the payment of a part or all of the price or upon the performance of some other condition or happening, some other contingency, the title in the meantime to be retained by the vendor.

While there has been a great deal of confusion of thought on the subject of bailment leases and conditional sales, there inheres in the conditional sale a completed transaction with the possession in the vendee and the retention of title in the vendor. Little help is offered in the construction of an agreement by the use of the words "rent" or "sell" by the parties concerned for while the term "rent" may be used, what the parties really effectuated taking into account the whole tenor of the agreement, might be a conditional sale and also where the word "sell" is used what the parties really effectuated may have been a bailment lease. Accordingly, the determining question is one of fact, was the transaction a sale or a bailment? Here while the word "rent" is used there is no monthly rental reserved such as is found in most of the bailment leases construed by the Courts of Pennsylvania. General Motors Acceptance Corp. v. Horton, 3 Cir., 85 F.2d 452; General Motors Acceptance Corp. v. Hartman et al., 114 Pa.Super 544, 174 A. 795; Commonwealth v. Motors Mortgage Corp., 297 Pa. 468, 147 A. 98. Usually a monthly sum is reserved, which at the end of the term, by the payment of a nominal sum, the purchase price of the article is made up, and title is passed to the vendee. Here there is an interest charge of ½% per month or 6% per year on the purchase price of the machinery and this is to be paid on all monthly balances, it being significant that no definite sum other than the interest charge is reserved by way of installment; no provision for the return of the machinery is provided for in the agreement and while this is in no wise controlling, it is nevertheless of significance; this, coupled with the fact that provision is made that all invoices of the bankrupts were to be assigned for payment to the Bright-Brooks Lumber Company shows almost conclusively that the arrangement was a debtor-creditor relationship, since obviously resort was made to this as a guarantee of the payment of the machines.

The Referee has treated the machinery in question under two headings, the one we have disposed of and the second concerns itself with certain machinery purchased by the Bright-Brooks Lumber Company from Alfred S. Knesby after the 18th of June, 1938; the Referee has found that this purchase was a conditional sale and void as against the trustee in bankruptcy, and I also so find. I think that under a fair construction of the entire contract, the purchase by the Bright-Brooks Lumber Company for the bankrupts was done pursuant to the provisions in the agreement which recited as follows: "Should we buy additional machinery for you we would charge a profit of 10% for the outlay". While the purchase of machinery from Alfred S. Knesby could not have been within the intention of the parties at the time of the drawing of the agreement, nevertheless as indicated, I feel that taking into consideration the whole context, the purchase was done pursuant to the provisions adverted to. However, as we have indicated, the whole tenor of this agreement shows a conditional sale and since there was no recording by the vendee, the vendor cannot assert a valid title as against the trustee.

Order of the Referee is hereby affirmed, and a decree may be submitted in accordance with this opinion.