Basore Construction Corp., Appellant, *v.* Brinker Supply Company.

Argued April 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before LANSBERRY, P. J.

*Frank A. Orban, Jr.,* with him *Emanuel S. Leopold, Isaiah Scheeline, Jr.,* and *Scheeline and Leopold,* for appellant.

*Archibald M. Matthews,* for appellees.

OPINION BY ERVIN, J., June 11, 1958:

The sole question presented by this appeal is whether the lessor in a bailment lease may repossess the bailed article where the lessee has paid the full purchase price but has not paid the further sum of $1.00 prescribed by the agreement as the price for delivery of the bill of sale.

On June 18, 1951 Brinker Supply Company, hereinafter called "Brinker," as lessor, entered into written bailment lease with A. J. Stormer & Son, hereinafter called "Stormer," lessee, by which it leased a backhoe attachment, hereinafter called "backhoe," for a total rental of $2,400.00, $400.00 being payable upon the signing of the lease and $200.00 being payable on the 16th day of each and every month thereafter during the term of the lease "until the full amount of said rent is fully paid and discharged." The lease con-

tained the usual clause for return of equipment by the lessee to the lessor at the expiration of the term of the lease and also the usual provision for the payment of $1.00 by the lessee to the lessor and the execution and delivery thereupon of a bill of sale from the lessor to the lessee. The lessor also delivered to the lessee an invoice which set forth: "SOLD TO—A. J. Stormer & Son . . . TERMS Net Cash . . . I Backhoe Attachment for Model 42 Bay City Shovel $2400.00." Stormer paid Brinker all of the rental payments by check. The final check, dated in May 1952, which was accepted and cashed by Brinker, bore the notation: "Backhoe Att. In Full $200.00." Fred Brinker, Secretary of the defendant, admitted the receipt of these checks and the payment of the $2,400.00. He further admitted that no demand had ever been made with respect to this backhoe until June 1954, two years after the acceptance of the check marked "In Full." The backhoe remained in Stormer's possession until his death in August 1953, when it was being used as a part of the construction equipment employed by him in the performance of a contract which he had undertaken for the Shippensburg Borough Authority. Stormer defaulted in the performance of his contract with the Authority, whereupon it took over the completion of the work as provided in its contract with Stormer and in that connection took possession, inter alia, of the backhoe here in suit. The Authority thereafter contracted with Basore Construction Corp., hereinafter called "Basore," for the completition of the work and the Authority delivered possession of the backhoe to Basore. On July 3, 1954 Brinker took possession of the backhoe at Shippensburg and removed it to Somerset, where it was located at the Firestone Equipment Repair lot by the Sheriff of Somerset County, pursuant to the writ of replevin issued by Basore. Basore filed its

bond in the amount of $5,000.00 and the sheriff delivered the backhoe to it. In the replevin action the jury rendered a verdict for the defendant Brinker, allowing $2,500.00 as the value of the backhoe, in favor of Brinker and against Basore. Basore took this appeal from the refusal of its motions for the entry of judgment n.o.v. or, in the alternative, for a new trial. We are satisfied that judgment n.o.v. should have been entered for Basore.

Basore's possession rested upon the property rights of Stormer. The rental payments having been made in full, payment of the $1.00 nominal consideration for the bill of sale for the backhoe was unnecessary to vest title in Stormer. Brinker defended solely upon the fact that the $1.00 nominal consideration had not been paid by Stormer to it. The court below took the position that the payment of $1.00 was necessary in order to work a transfer of title from Brinker to Stormer.

In *Kelley Springfield Road Roller Co. v. Schlimme,* 220 Pa. 413, 69 A. 867, as in this case, an equipment company sold to a building contractor a piece of equipment on the same type of bailment lease, which provided that upon the payment of the rental "and that for the further consideration of one dollar, you will sell and deliver said rollers to us and make a bill of sale for the same." The Court said: "The rights of the parties in these actions depend upon the contract between the plaintiff company and the construction company, and the subsequent action of the parties in pursuance thereof. The contract itself shows that the $5,-400 required to be paid for the use of the rollers constituted the full value of the rollers. That appears conclusively from the stipulation in the contract by which the plaintiff company was to sell and deliver the rollers to the construction company on the payment of that

sum and an additional nominal consideration. While the contract provides that the sum named shall be 'for the use and hire of the said steam road rollers for a period of thirteen months,' yet the clause providing for the sale determines the fact that the sum was the full consideration for the machines. . . .

"The contract may be regarded as dual: (1) a hiring or bailment, and (2) a contract of sale. The ultimate purpose of the agreement was a sale of the rollers to the construction company. If the latter complied with the terms of the contract as to payment, the title of the machines passed to the construction company, and it could demand of the plaintiff a bill of sale transferring the title to it. . . . The title would follow the possession as soon as all the installments of the consideration money were paid, and then an indefeasible title to the machines would become vested in the construction company.

"The so-called lease or bailment was to preserve the ownership of the bailor until the full consideration money was paid. The plaintiff company did not intend the title to the machines to pass from it until that event had occurred, and, under our decisions, the contract entered into by the parties was legitimate and legal for such purpose.

". . . Of course, it is not to be reasonably inferred, that the construction company would pay the $5,400, the value of the machines, and redeliver them to the plaintiff at the expiration of the so-called lease. On the other hand, the reasonable presumption is that if the construction company had paid the $5,400, it would have required the plaintiff to comply with the stipulation in the contract and transfer the title to the machines to the construction company. . . .

". . .

"It was not the intention that the construction company should pay the price and that the plaintiff should retain the machines."

See also *Valicenti v. Central Motors, Inc.*, 115 Pa. Superior Ct. 74, 174 A. 799.

In *Struthers v. Drexel*, 122 U. S. 487, 30 L. Ed. 1216, 7 S. Ct. 1293, the precise question now before us was ruled upon. In that case the parties entered into the following agreement: "Whereas, Joseph W. Drexel has purchased four hundred shares of the stock of the Blair Iron & Steel Company, sold by A. S. Diven, trustee of said company, at the price of fifty dollars per share, now we, the undersigned, in consideration to us of one dollar in hand paid, the receipt whereof is hereby acknowledged, do hereby agree that if, at the end of one year from this date, the said Drexel shall desire to sell the said shares at the price paid for the same by him, we will purchase the same at that price, and pay to him the amount paid by him on the same, with interest at the rate of seven per cent. per annum."

Thereafter, when the defendants refused to perform, plaintiff brought an action in assumpsit for the agreed price of the stock. This action, as in the case at bar, was defended on the basis that the dollar had not been paid. In overruling this defense the Court held: "The second count of the declaration sets forth a contract whereby the plaintiff sold and agreed to deliver to the defendants 400 shares of the capital stock of the Blair Iron & Steel Company, at the price specified, to be paid by the defendants on delivery, in consideration whereof the defendants undertook and promised to accept the said stock, and pay for the same on delivery in accordance therewith. This is precisely the legal effect of the contract set out in the instrument dated April 4, 1873. The recital in that instrument, that the plaintiff had purchased the same from the trustee of the

Blair Iron & Steel Company, is mere matter of inducement and immaterial. The statement of the consideration of one dollar paid is also entirely immaterial, and may be treated as merely nominal. The real agreement embodied in the instrument is, according to its legal effect, that at the end of one year from that date the defendants would buy and pay for the number of shares of stock mentioned at the price specified, on delivery thereof at that time by the plaintiff.

"...

"The third bill of exceptions states that in the further progress of the trial the defendants' counsel offered to prove by two witnesses that the consideration, one dollar, named in the said agreement, was not paid by the plaintiff, or by anybody on his behalf, to the defendants. This offer was rejected on objection made and an exception taken. We have already said that the mention of this nominal consideration was entirely immaterial, and might properly be omitted from any statement of the contract in a pleading which set out its legal effect. It was, of course, therefore, not necessary to prove it, and immaterial if disproven. The real consideration for the defendants' agreement to buy was the plaintiff's agreement to sell, determined by the exercise of his option, and the tender for delivery of the stock for that purpose."

We have had numerous contacts with bailment leases, mortgages, deeds and other forms of agreement and cannot recall one case in which the nominal consideration of $1.00 was actually paid. It is a fiction inserted in a bailment lease to preserve the security of the lessor until the instalment payments, which constitute the real consideration, have been fully paid. It would be unconscionable to permit Brinker to receive double payment of $2,400.00 for an article worth only $2,400.00 when it was originally delivered. While

bailment leases serve well in assisting people to carry out their desires and purposes in a modern business age, the courts will not permit them to be used as instruments of oppression. A bailment lease will be preserved so long as the real consideration remains unpaid. When the full consideration has been paid, the law will enforce the ultimate intent of the parties to effectuate a contract of sale and will consider that the title has passed from the lessor to the lessee without the payment of the nominal consideration of $1.00. By so doing we are giving effect to the real intention of the parties.

Our disposition of this phase of the matter makes it unnecessary for us to consider appellant's argument relative to the refusal of its motion for a new trial.

Judgment reversed and the record is remanded to the court below for the entry of judgment n.o.v. in favor of the appellant.